MICHAEL MEADOWS *v.* HARRISON SCOTT
HIGGINS ET AL.
(SC 15997)

Borden, Berdon, Norcott, Katz and McDonald, Js.

Argued March 17—officially released June 1, 1999

*Jerome A. Mayer*, for the appellant (plaintiff).

*William A. Phillips*, for the appellees (named defendant et al.).

*Opinion*

KATZ, J. The defendants Harrison Scott Higgins and Linda Plank Higgins (defendants)[1] appealed to the Appellate Court from the judgment of the trial court rendered in favor of the plaintiff, Michael Meadows, doing business as Paper Pro, ordering strict foreclosure of his mechanic's lien. The defendants claimed that the trial court had improperly: (1) determined that the Home Improvement Act (act),[2] did not apply to the transaction between the plaintiff and the defendants; and (2) awarded attorney's fees to the plaintiff pursuant to General Statutes § 52-249, which provides for such fees in foreclosure actions. Additionally, the defendants appealed from the judgment of the trial court rendered in favor of the plaintiff as to their counterclaim,[3] which alleged that, by violating the act, the plaintiff's actions constituted an unfair or deceptive trade practice in violation of the Connecticut Unfair Trade Practices Act (CUTPA).[4] The Appellate Court determined that, although the act does not apply to a subcontractor, it did apply to the transaction between the parties, and, therefore, the Appellate Court reversed the judgment of the trial court. *Meadows* v. *Higgins*, 49 Conn. App. 286, 296, 614 A.2d 51 (1998).

We conclude that the Appellate Court properly held that the act does not apply to a subcontractor. We also conclude, however, that the Appellate Court improperly rejected the trial court's findings that the plaintiff was

[1] Darien Design and Construction, Inc., Site Design Associates, and Mac-Millan and Associates were also named as defendants in the trial court. Those parties, however, are not involved in this appeal.

[2] See General Statutes § 20-418 et seq. We note that although there have been some technical changes made to the provisions of the act cited herein since the time of the events that formed the basis of the underlying action, references in this opinion are to the current revision.

[3] The first count of the defendants' counterclaim was not involved in the defendants' appeal to the Appellate Court.

[4] See General Statutes § 42-110a et seq.

acting as a subcontractor to a general contractor and that, therefore, there was no contract between the plaintiff and the defendants subject to the act. Accordingly, we reverse the judgment of the Appellate Court.

The Appellate Court set forth the following relevant factual history. "An attorney trial referee found the following facts. The defendants are the owners of a parcel of residential property located in the town of Greenwich. Sometime prior to November, 1992, the defendants entered into a written contract with BCS Construction, Inc. (BCS), pursuant to which BCS agreed to serve as a consultant to the defendants on a project to renovate the defendants' single-family home. In accordance with that contract, Bruce Simon, a principal of BCS and a registered home improvement contractor, was designated the construction manager for the project. Simon subsequently arranged to have the plaintiff provide painting and wallpapering services to the defendants. There was no document or writing setting forth the terms of the agreement pursuant to which the plaintiff provided services and materials to the defendants. On January 15, 1993, the plaintiff had completed approximately 90 to 95 percent of the painting and wallpapering work when he was directed by the defendants to stop all work and leave the premises. The reasonable value of the services and materials provided by the plaintiff to the defendants is $29,255. The defendants have paid the plaintiff $12,840.

"On April 6, 1993, the plaintiff filed a certificate of mechanic's lien with the Greenwich town clerk, claiming a lien on the defendants' property in the amount of $16,415. On January 3, 1994, the plaintiff filed a one count complaint seeking, inter alia, foreclosure of the mechanic's lien, damages and attorney's fees pursuant to § 52-249. On October 25, 1994, the defendants filed an answer, five special defenses and a two count counterclaim. The special defenses to the foreclosure action

were that (1) the mechanic's lien was invalid because it allegedly was not filed within ninety days of the last date of any work performed by the plaintiff, (2) the plaintiff is a contractor within the meaning of the [act], who performed work on the defendants' home without having obtained a certificate of registration, (3) the plaintiff failed to advise the defendants of their cancellation rights, (4) any contract pursuant to which the plaintiff provided materials and services to the defendants was not entered into by a registered salesman or registered contractor and (5) there was no written contract signed by the plaintiff and the defendants. In the first count of their counterclaim, the defendants sought damages for the plaintiff's allegedly unsatisfactory, defective and negligent work. In the second count of their counterclaim, the defendants alleged that the plaintiff's actions constitute an unfair or deceptive trade practice in violation of [CUTPA], and sought, inter alia, compensatory and punitive damages, attorney's fees and interest.

"The case was tried to an attorney trial referee, who concluded that the mechanic's lien was timely filed and that the provisions of the [act] do not apply to the transaction between the plaintiff and the defendants. He also concluded that the defendants failed to meet their burden of proof on the allegations of unsatisfactory work performance and that the CUTPA violations alleged in the defendants' counterclaim were based on the [act], which does not apply to this case. The attorney trial referee recommended that the court render judgment in favor of the plaintiff as to the complaint, with reasonable attorney's fees pursuant to § 52-249, and as to both counts of the defendants' counterclaim.

"On February 26, 1997, the trial court, *Lewis, J.*, rendered judgment in accordance with the attorney trial referee's report. The trial court found that the provisions of the [act] do not apply to the transaction

between the plaintiff and the defendants because the plaintiff was acting as a subcontractor to Simon, who was a general contractor, and, therefore, there was no contract between the plaintiff and the defendants. The trial court concluded that 'as to the plaintiff's complaint, judgment is entered in favor of the plaintiff to foreclose his mechanic's lien and the amount of the debt due the plaintiff at this time is established at $16,415. As to the defendants' counterclaim, judgment is entered in favor of the plaintiff. This case should now be claimed for the foreclosure motion or short calendar to rule on the specifics of such foreclosure, including the amount of the debt with interest, the type and date of foreclosure, the value of the premises, etc.'

"On March 17, 1997, the defendants appealed from the judgment of the trial court. On June 25, 1997, [the Appellate Court] dismissed the defendants' appeal for lack of a final judgment. On August 11, 1997, the trial court, *Mintz*, *J.*, held a hearing on the plaintiff's motion for judgment of strict foreclosure. The trial court rendered judgment of strict foreclosure in favor of the plaintiff and set a law day of September 9, 1997. The trial court also determined the amount of the debt, $16,415, the appraisal fee, $450, and the title search fee, $150, and awarded the plaintiff attorney's fees of $8295. On August 19, 1997, the defendants filed this appeal." *Meadows* v. *Higgins*, supra, 49 Conn. App. 288–90.

On appeal to the Appellate Court, the defendants claimed that the trial court improperly had determined that the act did not apply to the transaction between the plaintiff and the defendants. The Appellate Court agreed with the trial court that the act does not apply to subcontractors. The Appellate Court determined, however, that because Simon had not served as a general contractor, the plaintiff had not served as a subcontractor, and that, consequently, the act applied. Id., 296. Thereafter, the Appellate Court concluded that, because

the plaintiff was not a registered home improvement contractor and did not have a contract with the defendants, he had violated the act and, therefore, was not entitled to enforce the provisions of any oral contract or to foreclose on his mechanic's lien. Id. Additionally, because a failure to comply with the act " 'is a per se violation of CUTPA by virtue of . . . [General Statutes § 20-427 (c)]' "; id.; the Appellate Court reversed the judgment with respect to the second count of the defendants' counterclaim, which alleged a violation of CUTPA. Id., 297.

The plaintiff thereafter filed a petition for certification, which we granted limited to the following question: "Did the Appellate Court properly conclude that the [act], General Statutes § 20-418 et seq., applied to the transaction between the plaintiff and the defendants?" *Meadows* v. *Higgins*, 247 Conn. 910, 719 A.2d 904 (1998).[5] This appeal followed.[6]

---

[5] The plaintiff conceded that if the act were to apply to this case, he would not be entitled to recovery of the money or foreclosure of the mechanic's lien.

[6] In their objection to the plaintiff's petition for certification, the defendants argued that the application of the act was not limited to instances in which the contractor and the homeowner had a contract. Notwithstanding their earlier assertion, the defendants agreed at oral argument before this court that in order for the act to apply there must be an agreement between the homeowner and the contractor. Indeed, they conceded that they had no contract with the plaintiff for this particular job. The defendants argued, nevertheless, that there also must be some form of agreement between the homeowner and the contractor to recover for work performed in order to bring an action to foreclose a mechanic's lien pursuant to General Statutes § 49-33 et seq. The plaintiff argues in response that the statutory scheme pertaining to mechanic's liens, as a codification of the law of unjust enrichment, requires consent, but it does not require a contract. The defendants acknowledge that they consented to the work, although they complain that they were unaware of many of the terms that would otherwise be applicable were the act to apply, such as when the job would be completed and how much it would ultimately cost. Because such protestations concerning the scope of § 49-33 were not raised earlier, they will not furnish a basis upon which to decide the issue on appeal. See Practice Book § 60-5 ("court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial"); *Yale University* v. *Blumenthal*, 225 Conn.

I

We begin by setting forth the applicable standards of review regarding questions of fact as well as issues of law, both of which are involved in the present case. It is axiomatic that "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 [now § 19-17] . . . . This court has articulated that attorney trial referees and factfinders share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court." (Citation omitted; internal quotation marks omitted.) *Elgar* v. *Elgar*, 238 Conn. 839, 848–49, 679 A.2d 937 (1996).

"The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) Id., 849.

Whether the act applies to the transaction at issue is a matter of statutory construction. "Statutory construction is a question of law and therefore our review is plenary." *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995). "[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the

32, 36 n.4, 621 A.2d 1304 (1993) (issue not reviewed because not raised at trial).

legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 32, 699 A.2d 101 (1997).

## II

In the present case, the trial court accepted the facts as found by the fact finder and rendered judgment in accordance with those facts. See General Statutes § 52-549s (a) (1); Practice Book § 23-58 (a) (1). Specifically, "[t]he trial court accepted the attorney trial referee's finding that, at the time the plaintiff provided services and materials to the defendants, he was not a registered home improvement contractor and did not have a written contract with the defendants that complied with the [act]. Nevertheless, the trial court concluded, on the basis of the facts found by the referee, that the act did not apply to the transaction between the plaintiff and the defendants, as a matter of law, because the plaintiff was acting as a subcontractor to Simon, who was a general contractor and, therefore, there was no 'home improvement contract' between the plaintiff and the defendants as that term is defined by the act." *Meadows* v. *Higgins*, supra, 49 Conn. App. 292–93.[7]

---

[7] The plaintiff had argued to the attorney trial referee that he filed the mechanic's lien as though he had been *either* Simon's agent *or* a subcontractor. He currently distances himself from the label of subcontractor because he claims that the determination of whether a worker is technically a subcontractor cannot easily be made based on outward appearances, particularly when that worker is not privy to the arrangement that the contractor, to whom he reports, has with the homeowner. Rather than limit himself to the label of subcontractor, the plaintiff adopts the same rationale as to why the act does not apply, arguing essentially that the act applies only when there has been an agreement, either written or oral, between the homeowner

Thereafter, in reliance on its decision in *O'Donnell* v. *Rindfleisch*, 13 Conn. App. 194, 195, 535 A.2d 824, cert. denied, 207 Conn. 805, 540 A.2d 373 (1988),[8] the Appellate Court agreed with the trial court that the act does not apply to subcontractors. *Meadows* v. *Higgins*, supra, 49 Conn. App. 293. Both parties also agree, essentially, that the act does not apply to subcontractors. We are informed by and draw upon the reasoning of the Appellate Court to conclude likewise.

As noted previously, whether the act applies to the circumstances of this case is a matter of statutory construction. Therefore, our analysis begins with the relevant language of the act. General Statutes § 20-420 (a) provides in part that "[n]o person shall hold himself out to be a contractor or salesman without first obtaining a certificate of registration from the commissioner [of consumer protection] as provided in [chapter 400], except that an individual or partner, or officer or director of a corporation registered as a contractor shall not be required to obtain a salesman's certificate. . . ." General Statutes § 20-419 (3) defines "contractor" as "any person who owns and operates a home improvement business or who undertakes, offers to undertake or agrees to perform any home improvement. . . ." General Statutes § 20-429 (a) provides in part that "[n]o home improvement contract shall be valid or enforceable against an owner unless it . . . (8) is entered into by a registered salesman or registered contractor. . . ."

---

and the worker seeking to recover. According to the plaintiff, the protections as well as the spirit of the act have been fulfilled in this case whether the plaintiff was technically a subcontractor or because he had no contract directly with the defendants. Because we have concluded that the trial court properly approved the attorney trial referee's finding that the plaintiff was a subcontractor, we need not decide the parameters of the plaintiff's argument.

[8] In *O'Donnell*, the Appellate Court considered whether the plaintiff, a registered contractor, had violated either the act or CUTPA by subcontracting the defendant homeowners' roofing work to a roofer who was not registered as a home improvement contractor under the act.

Nowhere is there any mention of subcontractors. It is, therefore, not apparent on the face of the act whether the legislature intended that subcontractors hired by contractors in the home improvement industry register themselves as contractors with the department of consumer protection under its terms. We note, however, that salesmen are included in the registration requirement of § 20-420, and that individuals, partners, and officers or directors of a registered corporation are excluded from having to register as salesmen. We therefore agree with the Appellate Court that "[i]t is reasonable to assume that if the legislature had intended to include subcontractors within the registration requirement of the [act], it would have listed them as affected parties in § 20-420." *O'Donnell* v. *Rindfleisch*, supra, 13 Conn. App. 201.

We next look to the legislative history of the act to discern the legislature's intent regarding the act's scope and purpose, and the policy underlying the act's passage. "The [act] is a remedial statute that was enacted for the purpose of providing the public with a form of consumer protection against unscrupulous home improvement contractors. . . . The aim of the statute is to promote understanding on the part of consumers with respect to the terms of home improvement contracts and their right to cancel such contracts so as to allow them to make informed decisions when purchasing home improvement services. . . . 22 S. Proc., Pt. 17, 1979 Sess., p. 5797, remarks of Senator Audrey P. Beck." (Citations omitted.) *Wright Bros. Builders, Inc.* v. *Dowling*, 247 Conn. 218, 231, 720 A.2d 235 (1998).

"Nowhere in the legislative consideration is there revealed an intent to include subcontractors within the registration requirement. Its aim was targeted only at contractors who deal directly with property owners. That is evident in these words of its proposer, Representative [William] Candelori: '[T]he act requires that every

home improvement contract as defined in this piece of legislation be in writing, *contain the entire agreement between the owner and contractor*, and each party must have a completed copy of [the] contract at the time the contract is executed.' . . . [22 H.R. Proc., Pt. 33, 1979 Sess., p. 11,621.]

"The contract between the contractor and the subcontractor is not within the purview of the act, and need not be under its purpose and premise, for by its terms the contractor is responsible to the consumer and the commissioner of consumer protection for whatever the subcontractor may do. The level of the act's protection does not reach the contractor in his relationship with a subcontractor. In such a business relationship, the contractor is not a consumer. It is clear from the legislative record that the registered contractor was intended to be the person liable for the actions of persons he hires, employs or engages as a subcontractor to work on a homeowner's improvement project." (Emphasis in original.) *O'Donnell* v. *Rindfleisch*, supra, 13 Conn. App. 203–204.

We agree with the Appellate Court that, as a matter of law, the act was not intended to apply to the transaction between a subcontractor and the homeowner, because in such circumstances there is no "home improvement contract" as that term is defined by the act. See General Statutes § 20-419 (5). Indeed, in all of the cases to which this court and the Appellate Court have applied the act, the relationship that generated the dispute was that of *contractor* and *owner*, and in each, the contractor was attempting to enforce an *agreement* with the owner to perform home improvements. See, e.g., *Rizzo Pool Co.* v. *Del Grosso*, 232 Conn. 666, 680, 657 A.2d 1087 (1995) (enforcement precluded because contract did not provide commencement and completion dates); *Wadia Enterprises, Inc.* v. *Hirschfeld*, 224 Conn. 240, 242, 250–53, 618 A.2d 506 (1992) (refusal to enforce defective

home improvement agreement under theory of waiver, estoppel or consent); *Habetz* v. *Condon*, 224 Conn. 231, 235–36, 618 A.2d 501 (1992) (despite fact that contract failed to provide notice of cancellation provision, contractor recovery permitted due to bad faith by homeowner); *Liljedahl Bros., Inc.* v. *Grigsby*, 215 Conn. 345, 350, 576 A.2d 149 (1990) (refusal to enforce deficient agreement under theory of implied contract); *A. Secondino & Son, Inc.* v. *LoRicco*, 215 Conn. 336, 344, 576 A.2d 464 (1990) (refusal to enforce nonconforming home improvement agreement under theory of quasi-contract); *Barrett Builders* v. *Miller*, 215 Conn. 316, 325, 576 A.2d 455 (1990) (refusal to enforce nonconforming home improvement agreement under theory of unjust enrichment); *Caulkins* v. *Petrillo*, 200 Conn. 713, 718–19, 513 A.2d 43 (1986) (refusal to allow recovery under doctrine of full performance where home improvement agreement did not meet requirements of statute); *Sidney* v. *DeVries*, 18 Conn. App. 581, 589, 559 A.2d 1145 (1989), aff'd, 215 Conn. 350, 575 A.2d 228 (1990) (refusal to enforce agreement under theory of quantum meruit). The outcome in each of these cases resulted from a failure to comply with the act by the target of the act, that is, the contractor who had dealt directly with the homeowner and who had been the party ultimately responsible for the subcontractor. We further agree with the Appellate Court's reasoning in *O'Donnell* "that requiring subcontractors to register as home improvement contractors would be unreasonable and unduly burdensome in an industry where most . . . construction work is often subcontracted . . . by a general contractor who oversees the entire project and is responsible [to the owner] for the final result." *O'Donnell* v. *Rindfleisch*, supra, 13 Conn. App. 204.

Finally, "[t]ime and again, we have characterized the failure of the legislature to take corrective action as manifesting the legislature's acquiescence in [judicial]

construction of a statute." (Internal quotation marks omitted.) *Bocchino* v. *Nationwide Mutual Fire Ins. Co.*, 246 Conn. 378, 386, 716 A.2d 883 (1998). Because a sufficient interval to permit legislative reconsideration has passed since *O'Donnell* was decided, without corrective legislative action, we interpret such inaction as a stamp of approval by the legislature of the Appellate Court's determination that a subcontractor is not included within the purview of the act.

### III

Although the Appellate Court agreed with the trial court's interpretation of the statute, it disagreed with the trial court that the attorney trial referee properly had characterized the relationship between the parties. Our review of the record convinces us that the attorney trial referee's findings were not clearly erroneous.

The following facts regarding the status of the plaintiff, the defendants and Simon, were found by the attorney trial referee.[9] The defendants and BCS entered into a written agreement pursuant to which BCS agreed to act as a consultant to the defendants on a project to renovate their single-family home. In accordance with the agreement, Simon was designated as construction manager for the project. In the "Legal Discussion" portion of the attorney trial referee's report, quoting the opposition to the defendants' special defenses by Mac-Millan and Associates, who was another defendant to the plaintiff's foreclosure action by reason of its own mechanic's lien, the attorney trial referee noted that Simon "solicited the specialty subcontractors [like the plaintiff] for them . . . ." Additionally, Simon and

---

[9] Some of the facts upon which the trial court relied were set forth in the portion of the attorney trial referee's report marked "Legal Discussion," while others were expressly listed numerically as facts. It appears that the Appellate Court focused on the latter category of facts. We do not see a distinction of any legal significance.

Doug VanderHorn, the architect, "essentially managed this construction project as agents of the owner from design to delivery . . . [and they] were required to fulfill the normal duties of a home improvement contractor," which included "obtaining permits, controlling schedules and meeting payments." As part of his responsibilities, Simon contacted the plaintiff and invited him to provide services to the defendants. As a result of proposals made by the plaintiff and conveyed to the defendants by Simon, and pursuant to subsequent discussions between the plaintiff and the defendants and between the plaintiff and Simon, the plaintiff provided painting and wallpapering services to the defendants. The plaintiff did not enter into a written contract with the defendants. Rather, it was Simon's function to supervise the plaintiff's work at the defendants' home. "Simon determined when the plaintiff was to begin work at the [defendants'] home . . . [and he] had the authority to accept or reject the work of the plaintiff." Finally, according to the attorney trial referee, "Simon found the plaintiff, accepted his bid, told him his start date, scheduled his work, accepted or rejected his work, and communicated criticisms of the work from Mr. Higgins to the [p]laintiff."

Although the attorney trial referee did not expressly find as a fact that Simon had served as a general contractor for the renovation work performed on the defendants' home, he nevertheless concluded that, because Simon had "performed most of the functions of a general contractor vis-a-vis the plaintiff," Simon had acted essentially as a general contractor and, therefore, the arrangement between the plaintiff and the defendants did not support the existence of an agreement between a contractor and an owner for the purposes of § 20-419 (5). Accordingly, the attorney trial referee recommended that judgment enter for the plaintiff on his action in foreclosure. The attorney trial referee also

rejected the defendants' counterclaims alleging a violation of CUTPA and poor workmanship.

In its memorandum of decision, the trial court recited the aforementioned facts found and the conclusions drawn therefrom by the attorney trial referee.[10] From those facts, the trial court proceeded to its next task of deciding "whether the referee's conclusions follow legally and logically from the underlying facts" in accordance with its obligation "to consider whether the conclusions reached were in accordance with the

---

[10] Additionally, the trial court traced the procedural history of the case, focusing on the defendants' posttrial motions. Pursuant to Practice Book § 19-12, formerly § 438, the defendants filed a motion to correct the attorney trial referee's report. Specifically, "[t]he defendants sought the addition of the following corrections to the report: (1) the contract between Simon and the defendants described the former as a 'consultant' only, not a general contractor, and that Simon did not have the authority to sign contracts for the defendants or approve change orders; (2) the plaintiff was not 'hired' by Simon, but rather he was 'invited' by Simon to perform work on the defendants' premises; and (3) the plaintiff did not submit change orders to Simon." The attorney trial referee's only significant response was to correct his earlier statement that Simon had "hired" the plaintiff, substituting instead that the plaintiff had been contacted by Simon, that the plaintiff had made the work proposal, that Simon had brought the plaintiff to the job site, told him when to work and had advised him that he would be paid directly by the defendants, who, along with Simon, would approve change orders. It is the corrected report of the attorney trial referee to which this opinion refers.

Pursuant to Practice Book § 19-13, formerly § 439, the defendants then filed an exception to the corrected report challenging once again the characterization of the roles. They did not, however, file a transcript with the court, and therefore, the trial court properly concluded that it was "impossible for the court to ascertain whether there is support in the record for the referee's findings of fact." Therefore, the factual findings properly stood uncorrected, and the court's role was limited to "determining whether the subordinate facts found by the attorney referee were sufficient to support the referee's ultimate factual conclusions." *Blessings Corp.* v. *Carolton Chronic & Convalescent Hospital, Inc.,* 7 Conn. App. 364, 367, 508 A.2d 829 (1986).

Finally, in the absence of an objection under Practice Book § 19-14, formerly § 440, the trial court remarked that the referee's conclusions also stood unchallenged. See *Elgar* v. *Elgar,* supra, 238 Conn. 848–49. Consequently, the trial court concluded that "the facts found by the referee must stand unchallenged, including the finding that Simon performed the functions of a general contractor."

applicable law." (Internal quotation marks omitted.) See Practice Book § 19-17, formerly § 443. The trial court concluded that "[i]t follows legally and logically that if Simon was a general contractor, then the plaintiff was a subcontractor . . . ." Thereafter, the court reasoned that, in the absence of a contract between the plaintiff and the defendants, the act did not apply, and rendered judgment for the plaintiff as to his foreclosure action as well as to the defendants' counterclaims.

In its review of the trial court's decision, the Appellate Court essentially disagreed with the factual basis of the trial court's decision, concluding that it was not supported by the attorney trial referee's findings. *Meadows* v. *Higgins*, supra, 49 Conn. App. 294–95. The Appellate Court focused on the fact that Simon never had entered into a contract with the defendants to perform renovations to their home, but instead served as a construction manager for a firm that had agreed to provide consulting services to the defendants. From this fact, the Appellate Court concluded that Simon was not obligated to perform any renovation work for the defendants that could have been the subject of a subcontract with the plaintiff. Id., 296. In addition, Simon was not paid by the defendants for work performed by the plaintiff. Finally, all of the parties understood that the defendants would pay the plaintiff for his materials and labor, and the defendants had in fact made payments directly to the plaintiff in the amount of $12,840.

In evaluating the attorney trial referee's report, the trial court recognized each one of those factors and concluded, nevertheless, that this choice of arrangement did not "alter the relationship of subcontractor, general contractor and homeowners, as determined by the referee." We agree. "Where the evidence is in conflict, its probative force is for the trier of fact to determine." *Bowman* v. *1477 Central Avenue Apartments, Inc.*, 203 Conn. 246, 257, 524 A.2d 610 (1987). Although

the attorney trial referee did not explicitly conclude that Simon was a general contractor, he did find that Simon had performed the *functions* of a general contractor, and that he had fulfilled the normal duties of a home improvement contractor. The factual foundation for such assertions is readily apparent from our review of the record. Admittedly, whether the general contractor can insulate the subcontractor from having to comply with the act is a question of law on which the attorney trial referee's opinion is entitled to no deference. *Seal Audio, Inc.* v. *Bozak, Inc.*, 199 Conn. 496, 510, 508 A.2d 415 (1986). That question of law, however, is one on which the trial court, the Appellate Court and this court are all in agreement.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the trial court's judgment of strict foreclosure and to remand the case to the trial court for further proceedings.

In this opinion the other justices concurred.