[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] SUPPLEMENTAL MEMORANDUM OF DECISION
On September 7, 1999, this court filed a memorandum of decision remanding this case to the attorney trial referee. By way of background, the plaintiff, Kevin MacMillan, a building contractor from New Hampshire, brought this action seeking to collect a balance of approximately $45,000 for renovations and additions he performed at the home of the defendants, Harrison Scott Higgins and Linda Plank Higgins, located at 13 Huntzinger Lane, Greenwich.
The case was referred to Attorney Samuel V. Schoonmaker, III, an attorney trial referee, in accordance with General Statutes § 52-434(a) CT Page 12000 and Practice Book § 19-2. The referee submitted a report finding that the contract between the parties did not comply with General Statutes § 20-418 et seq., the Home Improvement Act (HIA), because there was no notice of cancellation, and that the plaintiff, who appeared pro se during these proceedings, agreed that his contract did not comply with that act. The referee also found that the plaintiff had failed to prove that the defendants had acted in "bad faith" in invoking the HIA as a defense to his action.
Under the HIA, in the absence of bad faith, a homeowner is entitled to rescind a home improvement contract that fails to comply with the requirements in that act. Barrett Builders v. Miller, 215 Conn. 316,321-22, 328, 576 A.2d 455 (1990).[1] The "bad faith" exception requires one to establish "that the [defendant's] invocation of the HIA as a basis for [his] repudiation of the contract was in bad faith." Rizzo Pool Co.v. Del Grosso, 232 Conn. 666, 680, 657 A.2d 1087 (1995). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Bad faith means more than mere negligence; it involves a dishonest purpose." (Citations omitted; internal quotation marks omitted.) Habetz v. Condon,224 Conn. 231, 237, 618 A.2d 506 (1992). In Habetz, although there was no notice of cancellation, the builder recovered because of bad faith on the part of the homeowner. Id., 235-236.
The plaintiff argues that the bad faith in this case was perpetrated by the defendants and their agents, an architect and/or attorney, who prepared a contract that they knew did not comply with the HIA requirement regarding notice of the right to cancel. General Statutes § 20-429
(a)(6) requires that a home improvement contract "contain a notice of the owners cancellation rights in accordance with the provisions of chapter 740 [Home Solicitation Sales Act]."[2]
The plaintiff also claimed, as another example of bad faith, that the defendants and their former lawyer had previously used the HIA to attempt to deny payment to a painting and wallpapering contractor in defending the case of Meadows v. Higgins,249 Conn. 155, 157, 733 A.2d 172 (1999).
Before this court decided whether to accept the attorney trial referee's report regarding the HIA and the bad faith exception, the case was remanded to the attorney trial referee to comment on three matters. The first was whether the case of Wright Bros. Builders, Inc. v.Dowling, 247 Conn. 218, 720 A.2d 235 (1998), had any relevance to this case. In Wright, the Supreme Court ruled that a "perfect, ritualistic compliance" with the HIA was not required, Id., 229; that "practical" rather than "letter-perfect compliance" sufficed, Id., 231; and that CT Page 12001 compliance does not have to be "technically perfect." Id.
Second, the referee was asked what significance, if any, he attributed to the fact that the contract was not prepared by the plaintiff contractor but rather by the defendant homeowner and his agents. Third, what significance, if any, did the referee attribute to the fact that the defendants and their former attorney were familiar with and previously invoked the HIA as illustrated by their defense of Meadows v. Higgins, supra, 249 Conn. 155.
The attorney trial referee and the parties had previously agreed that the trial would be bifurcated and the issue of the alleged bad faith exception to the HIA would be ruled upon first. The second stage of the trial involved the counterclaim filed by the defendants, which alleges that the plaintiff did not perform his work adequately and was overpaid. Thus, this case was remanded to the referee for two reasons, the first for further comment on the HIA and the bad faith exception, and also to complete the trial regarding the defendants' counterclaim.
The attorney trial referee responded to the three queries from the court by indicating that: (1) the only issue before him was the alleged bad faith of the defendants because the parties had stipulated that the contract did not comply with the HIA because there was no cancellation clause at all, whereas Wright Bros. v. Dowling, supra, 247 Conn. 226, involved a technical non-compliance with the cancellation statute; (2) although the defendants' attorney's preparation of the contract "fell far short in terms of quality," because the contract did not comply with the HIA, the referee determined that the faulty contract preparation was not done "intentionally and in bad faith;" and (3) although the former attorney for the defendants knew of Meadow v. Higgins, supra,249 Conn. 155, and was experienced and competent with respect to the HIA, he did not intentionally "trick" the plaintiff or participate in "fraud or bad faith . . . [or act] with a dishonest purpose."
The plaintiff filed objections to the attorney trial referee's report as further clarified by the referee's response to the three inquires pertaining to the "bad faith exception" to the HIA. The objections reiterate the plaintiffs position that the defendants used the HIA in this case "in reverse of the legislative intent, as it was designed to protect homeowners against unscrupulous contractors, but is being used against small contractors by a savvy unscrupulous homeowner."
The plaintiff presented a plausible argument by bringing to light that defendants and their former attorney, described by the attorney trial referee as knowledgeable about the HIA, prepared the contract and had both been involved in Meadows v. Higgins, supra, 249 Conn. 155. If left CT Page 12002 to its own devises, the court might well find grounds for the bad faith exception. However, this issue must be seen in the context of the attorney trial referee program where a court does not have a free hand to substitute its judgment as to the facts for the judgment of the referee. It is well recognized that the issue of bad faith in the context of the HIA is a factual one. Habetz v. Condon, supra, 224 Conn. 231, 237 n. 11, and it is equally true that "[a] reviewing authority may not substitute its findings for those of the trier of the facts." Elgar v. Elgar,238 Conn. 839, 848, 679 A.2d 937 (1996). Thus, the referee's determination on the issue of bad faith is accepted which, in turn, means that judgment should and does hereby enter in favor of the defendants with regard to the plaintiffs claim for money damages.
Additionally, the referee conducted a trial on the defendants' counterclaim and issued a report dated February 1, 2001, finding the following facts: (1) the plaintiff did not walk off the job voluntarily because his services were terminated by the defendant homeowners on August 7, 1992; (2) on that date, the plaintiff had already completed 80% of the work at the defendants' home; (3) the total contract price, including a number of change orders, was $277,938, and the plaintiff had been paid $271,241, which included approximately $46,000 paid by the defendants directly to subcontractors, and therefore the difference between the contract price and the amount paid to or on behalf of the plaintiff was only $6,697(4) as of August 19, 1992, after payment to a subcontractor, 98% of the work called for in the contract between the parties had been completed; and (5) the defendants' contention that they had spent $164,350 to complete the project pursuant to the contract between the parties "is not credible," and was obviously spent for work outside the scope of that contract.
Based on these facts, the referee drew the following conclusions: (1) the defendants did not prove that the plaintiff had been overpaid; (2) the defendants did not prove that they expended a large sum of money to complete the project as specified in the contract; and (3) the defendants did not suffer any "ascertainable loss of money or property;" General Statutes § 42-110g (a); which would justify any type of recovery under CUTPA. Thus, the attorney trial referee recommended that judgment enter in favor of the plaintiff as to the defendants' counterclaim.
On March 15, 2001, the defendants filed objections to the attorney trial referee's report as authorized by Practice Book § 19-14.[3]
The defendants contend that: (1) the plaintiff completed at most only 79% of the project, not 80%, but had been paid 91% of the amount due him, and therefore the defendants were due a refund of $105,616; (2) the defendants were obliged to spend $164,350 to complete the project after the plaintiff walked off the job or was fired for "cause;" and (3) since CT Page 12003 the plaintiff violated CUTPA, they were entitled to attorney's fees of $49,981 incurred as of March 15, 2001, plus legal fees incurred after that date, as well as punitive damages of $500,000.
Practice Book § 19-17(a) concerns the function of this court in reviewing reports of attorney trial referees and provides that: "[t]he court shall render such judgment as the law requires upon the facts in the report. If the court finds that the . . . attorney trial referee has materially erred in its rulings or that there are other sufficient reasons why the report should not be accepted, the court shall reject the report and refer the matter to the same or another . . . attorney trial referee . . . for a new trial or revoke the reference and leave the case to be disposed of in court."
The case of Killion v. Davis, 257 Conn. 98, 102-103, ___ A.2d ___
(2001), holds that the court's role in reviewing an attorney trial referee's report is as follows: first, "the trial court must review the referee's entire report to determine whether the recommendations contained in it are supported by findings of fact in the report." (Internal quotation marks omitted.) Id., 102. Second, the court must insure that the report does not contain "legal conclusions for which there are no subordinate facts." (Internal quotation marks omitted.) Id. Third, the report must be reviewed to determine if it is "legally and logically correct." (Internal quotation marks omitted.) Id. In this case, however, a transcript of the trial before the attorney trial referee was provided, and therefore, a preliminary task for this court to determine is whether here is evidence in the record to substantiate the factual findings made by the referee. See John M. Glover Agency v. RDBBuilding, LLC, 60 Conn. App. 640, 646, 760 A.2d 980 (2000).
Other principles governing attorney trial referee reports provide that: "A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of attorney trial referees." (Citations omitted.) Wilcox Trucking, Inc. v. Mansour Builders, Inc.,20 Conn. App. 420, 423, 567 A.2d 1250, cert. denied, 214 Conn. 804,573 A.2d 318 (1989). Furthermore, "attorney trial referees and facffinders share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court." (Internal quotation marks omitted.) Id., 423-24.
The findings of fact in a contract action, such as this case, "should be overturned only when they are clearly erroneous." Wilcox Trucking,Inc. v. Mansour Builders, Inc., supra, 20 Conn. App. 425. A fact-finder's CT Page 12004 recommendations should be accepted when "there is nothing that is unreasonable, illogical or clearly erroneous in the findings of the fact finder and the reasonable inferences that may be drawn therefrom." Id.
First, this court will address the issue of whether there is support in the record for the referee's findings of fact that were challenged by the defendants. The objections involve two distinct claims by the defendants: what percentage of the work specified in the contract and change orders had been completed at the time when the plaintiff no longer was working on the project, as compared with the amount he had received from the defendants, and, secondly, how much, if anything, did the defendants spend to complete the project.
A review of the transcript indicates that there is sufficient support in the record for the referee's key findings that there had been not been any overpayment to the plaintiff and that the defendants did not spend any money to complete the work required by the original contract between the parties, although they clearly spent a lot of money for work that was not part of the contract and constituted extras or was the result of change orders.[4]
The court finds that the referee chose to believe the testimony offered by the plaintiff and not that of the defendants regarding how much work remained to be performed when the plaintiff stopped working at the defendants' home and whether the plaintiff had been overpaid. "The finder of fact is in a better position to determine the credibility of witnesses and the weight to be accorded their testimony." Beizer v. Goepfert,28 Conn. App. 693, 706, 613 A.2d 1336, cert. denied, 224 Conn. 901,615 A.2d 1044 (1992), cert. denied, 507 U.S. 973, 113 S.Ct. 1416,122 L.Ed.2d 786 (1993). Moreover, "[w]hether and on what terms a contractual commitment has been undertaken are ultimately questions of fact for the trier of fact." Presidential Capital Corp. v. Reale, 231 Conn. 500, 507,652 A.2d 489 (1994).
The trier of fact determined that the plaintiff was not overpaid and that the defendants were not obliged to spend money to complete the project. These findings cannot be said to be "clearly erroneous." WilcoxTrucking, Inc. v. Mansour Builders, Inc., supra, 20 Conn. App. 425.
Based upon a review of the report regarding the counterclaim by the defendants, the court finds that the attorney trial referee's conclusions and recommendations are supported by the subordinate facts that he found. The ultimate conclusions that the defendants are not entitled to recover any money from the plaintiff on their counterclaim follows logically and legally from the findings by the attorney trial referee that the defendants had not been obliged to expend the amount claimed to CT Page 12005 finish the project, and that the plaintiff had not been overpaid.
Accordingly, judgment enters in favor of the plaintiff as to the defendants' counterclaim. Costs are not taxed in favor of either party.
So Ordered.
Dated at Stamford, Connecticut, this 28th day of August, 2001.
William B. Lewis, Judge Trial Referee.