******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LEE WINAKOR *v.* VINCENT SAVALLE
## (SC 20516)

Robinson, C. J., and McDonald, D'Auria,
Kahn, Ecker and Keller, Js.

*Syllabus*

Pursuant to the Home Improvement Act (§ 20-419 (4)), home improvement
includes, inter alia, "the repair, replacement, remodeling, alteration . . .
[or] improvement . . . to any land or building or that portion thereof
which is used or designed to be used as a private residence" but does
not include "(A) [t]he construction of a new home . . . ."

The plaintiff sought to recover damages from the defendant contractor for,
inter alia, breach of contract and violations of the Home Improvement
Act (§ 20-418 et seq.). The plaintiff had executed a contract with G Co.
for the construction of a new house on land owned by the plaintiff.
That contract permitted the plaintiff to contract for necessary site work
with a separate contractor. Thereafter, the plaintiff and the defendant
entered into a separate contract providing that the defendant would
perform certain site work in connection with the construction of the
new house, including the digging of a hole for the foundation, the installa-
tion of a septic tank and footing drains, and the construction of two
retaining walls and two driveways. G Co. completed its construction of
the house, and the plaintiff received a certificate of occupancy. At that
time, however, the defendant had not completed the site work he was
obligated to perform under the parties' contract. The planning and zoning
commission of the town in which the plaintiff's property was located
informed the plaintiff that the house would be approved for zoning
compliance if certain site work was completed. The parties then entered
into a second contract requiring the defendant to complete the work
that was agreed on in the first contract by a certain date and at an
additional cost. The plaintiff ultimately became dissatisfied with the
quality and timing of the defendant's work, terminated their relationship,
and hired another contractor to complete the site work and to remedy
any flaws in the defendant's previous work. The trial court ruled in
part for the plaintiff, concluding that the defendant had breached the
contracts with the plaintiff by failing to complete the site work on
schedule and by causing the plaintiff to incur additional expenses to
repair and finish the work that the defendant was contractually required
to perform. The court also concluded that the defendant had violated
the Home Improvement Act by failing to comply with certain statutory
requirements regarding the form of the contracts and that the defendant's
violation of the Home Improvement Act constituted a per se violation
of the Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-110a et
seq.). The defendant appealed to the Appellate Court, which affirmed
the trial court's judgment with respect to the plaintiff's breach of contract
claim but reversed with respect to the plaintiff's claims under the Home
Improvement Act and CUTPA. The Appellate Court concluded that the
Home Improvement Act did not apply to the defendant's work, as that
work fell within the new home exception set forth in § 20-419 (4) (A),
and, consequently, the plaintiff failed to state a claim under both the
Home Improvement Act and CUTPA. The plaintiff, on the granting of
certification, appealed to this court. *Held* that the Appellate Court cor-
rectly concluded that the Home Improvement Act did not apply to the
defendant's work because that work fell within the new home exception
set forth in § 20-419 (4) (A), and, accordingly, this court affirmed the
Appellate Court's judgment: although the contracts between the plaintiff
and the defendant were separate from the contract between the plaintiff
and G Co. to construct the new house, the work the defendant agreed
to perform was within the scope of the work contemplated by the
contract between the plaintiff and G Co., as many of the projects the
defendant was obligated to complete were expressly included in the
contract between the plaintiff and G Co., and, thus, the work the defen-
dant agreed to perform would have been completed by G Co. if the
plaintiff had not elected to contract out the site work to the defendant;

moreover, G Co.'s construction work could not have proceeded without the defendant's work, as G Co.'s work depended physically and temporally on the defendant's foundation work, the defendant was required to communicate with G Co. throughout the defendant's performance of the site work, and the first contract between the plaintiff and the defendant specified that the defendant was to complete his work within a certain time for the purpose of facilitating G Co.'s construction of the house, and, thus, both the close timing and the extensive communication required between the defendant and G Co. led to the conclusion that the defendant's work was sufficiently interrelated with the construction of the house; furthermore, much of the work the defendant performed contributed directly to the habitability of the house, and that work was necessary in order for the house to comply with the town zoning requirements.

Argued December 20, 2021—officially released June 28, 2022

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of New London and tried to the court, *Frechette, J.*; judgment for the plaintiff, from which the defendant appealed to the Appellate Court; thereafter, the court, *Frechette, J.*, granted the plaintiff's motion for attorney's fees, and the defendant filed an amended appeal; subsequently, the Appellate Court, *Prescott, Moll* and *Harper, Js.*, reversed in part the trial court's judgment, and the plaintiff, on the granting of certification, appealed to this court. *Affirmed.*

*Paul M. Geraghty*, with whom was *Jonathan E. Friedler*, for the appellant (plaintiff).

*Patrick J. Markey*, with whom, were *James H. Lee* and, on the brief, *Mary H. Patryn*, for the appellee (defendant).

*Opinion*

KAHN, J. This appeal requires us to consider whether certain services provided by a contractor fall under the purview of the Home Improvement Act, General Statutes § 20-418 et seq. In this appeal, the plaintiff, Lee Winakor, claims that the Appellate Court incorrectly concluded that the Home Improvement Act did not apply to work performed on his property by the defendant, Vincent Savalle. The defendant claims that the work falls under the new home exception of the Home Improvement Act and, therefore, that the Appellate Court's conclusion was correct. We agree with the defendant and, accordingly, affirm the judgment of the Appellate Court.

The following undisputed facts and procedural history are relevant to the present appeal. In 2005, the plaintiff purchased real property located at 217 Legend Wood Road in North Stonington. In 2012, the plaintiff executed a contract with Golden Hammer Builders, LLC (Golden Hammer), through its principal, Brian Mawdsley, in order to construct a single-family home on the property. The contract contemplated the construction of the home and all related site work for a price of $425,300. It also contained a provision permitting the plaintiff to subtract $55,000 from the total cost of the construction by independently contracting for the necessary site work with a separate contractor.

After meeting with the plaintiff, the defendant submitted a bid to complete that site work for under $50,000. The plaintiff accepted the defendant's bid and drafted a contract to memorialize their agreement. That contract specifically required the defendant to "[p]urchase and supply any/all supplies . . . [c]lear [the] lot . . . remove stumps, [d]ig [the] foundation hole . . . and well trenches, [p]urchase and install [a] septic [tank] . . . build a wall along [the] edge of [the] lakeside . . . build two retaining walls . . . [build] [t]wo driveways . . . [reclaim] asphalt . . . [for the] driveway . . . [g]rade [the] driveway . . . [at] 8 [percent] . . . [i]nstall footing drains and backfill foundation, [f]inish [the] grade, [s]eed [the] . . . lawn, [and conduct any] [b]lasting . . . ." The contract further specified that the defendant would complete the work within one year of the start date. After the contract was signed, the defendant also orally agreed to dig a trench for the propane system and to install a patio. Mawdsley then applied for, and secured, a new home building permit under his new home construction contractor's license.

The defendant began his work in September, 2012. The trial court found that "[h]e hammered out a ledge for the foundation, installed a septic tank, constructed retaining walls . . . installed a propane tank and gas lines . . . installed the well electrical line, and partially finished the driveway." In December, 2013, Golden

Hammer completed construction of the house, and the plaintiff received a partial certificate of occupancy. A full certificate of occupancy was issued for the house in January, 2014.

At the time the certificate of occupancy was issued, however, the defendant had not yet completed the site work as contemplated by his contract with the plaintiff. The Planning and Zoning Commission of the Town of North Stonington issued a letter to the plaintiff indicating that the house substantially conformed to its zoning regulations and would be approved for zoning compliance on the condition that, among other things, "the final grading, landscaping, and soil stabilization be completed within [six] months," and the driveway be widened. The plaintiff and the defendant subsequently entered into a second contract requiring the defendant to complete the work that was set out in their first contract by April 1, 2014, for an additional $10,000.[1]

The plaintiff ultimately became dissatisfied with the quality of the defendant's work[2] and the defendant's failure to complete the project according to the schedule set forth in either their first or second contract. The plaintiff terminated his relationship with the defendant in April, 2014, and subsequently hired another contractor, Charles Lindo, to finish the work that the defendant had failed to complete and to remedy any flaws in the work that the defendant had completed. Lindo completed the site work at additional cost to the plaintiff, and the town subsequently notified the plaintiff that his new residence fully complied with its zoning regulations.

The plaintiff then commenced the present action against the defendant. The operative amended complaint contained five separate counts: (1) breach of contract; (2) unjust enrichment; (3) violations of the New Home Construction Contractors Act (New Home Act), General Statutes § 20-417a et seq.; (4) violations of the Home Improvement Act; and (5) violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., predicated on violations of the Home Improvement Act and the New Home Act. The case was subsequently tried to the court. In the memorandum of decision that followed, the trial court ruled in favor of the plaintiff on counts one, three, four, and five of the complaint. Specifically, the trial court found in favor of the plaintiff on count one, concluding that the defendant had breached his contract with the plaintiff by failing to complete the site work on schedule and by "using improper techniques and methods to [perform] the contract . . . [causing] the plaintiff [to incur] additional expenses to repair and finish the work the defendant was contractually required to do."[3] The court also ruled in favor of the plaintiff on counts three and four, concluding that the defendant violated the Home Improvement Act by failing to com-

ply with certain statutory requirements regarding the form of the contract. The trial court's memorandum of decision characterized both counts three and four of the complaint as having alleged a violation of the Home Improvement Act.[4] Finally, the court ruled in favor of the plaintiff on count five, concluding that the defendant's violation of the Home Improvement Act constituted a per se violation of CUTPA. The court awarded the plaintiff $100,173.32 in compensatory damages on these counts.

The plaintiff subsequently filed a motion seeking an award of attorney's fees under CUTPA. The court held a hearing on that motion and awarded the plaintiff $126,126.91 in attorney's fees and $2412.05 in costs. The defendant then appealed both the trial court's judgment and the award of attorney's fees to the Appellate Court.

Before the Appellate Court, the defendant claimed that (1) there was insufficient evidence to show causation of damages on the breach of contract count, and (2) the trial court's award under CUTPA was misguided because it was based on an incorrect application of the Home Improvement Act. The Appellate Court affirmed the trial court's judgment with respect to the breach of contract count but reversed with respect to the remaining claims, concluding that the Home Improvement Act did not apply to the defendant's work under the contracts. *Winakor* v. *Savalle*, 198 Conn. App. 792, 816, 234 A.3d 1122 (2020). Specifically, the Appellate Court concluded that the work performed by the defendant fell within the new home exception of the Home Improvement Act; General Statutes § 20-419 (4) (A); and that, as a result, the plaintiff had failed to state a claim under both the Home Improvement Act and CUTPA. *Winakor* v. *Savalle*, supra, 800–801.

In the present appeal, the plaintiff contends that the Appellate Court erred because the work performed by the defendant was distinct from the construction of the new home and, as such, fell within the scope of the Home Improvement Act and was not excluded by its new home exception. In response, the defendant argues that the work he performed was so interrelated to the construction of the new home that it must fall under the new home exception of the Home Improvement Act.

We begin by setting forth the appropriate standard of review. "Whether the [Home Improvement Act] applies to the transaction at issue is a matter of statutory construction. Statutory construction is a question of law and therefore our review is plenary." (Internal quotation marks omitted.) *Meadows* v. *Higgins*, 249 Conn. 155, 162, 733 A.2d 172 (1999). "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . .

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *State* v. *Marsh & McLennan Cos.*, 286 Conn. 454, 464–65, 944 A.2d 315 (2008); see also *Rizzo Pool Co.* v. *Del Grosso*, 232 Conn. 666, 676, 657 A.2d 1087 (1995) (*Rizzo*).[5]

We begin our statutory analysis, then, with the language of the Home Improvement Act. The definitions set forth in § 20-419 provide in relevant part: " 'Home Improvement' includes, but is not limited to, the repair, replacement, remodeling, alteration, conversion, modernization, improvement, rehabilitation or sandblasting of, or addition to any land or building or that portion thereof which is used or designed to be used as a private residence, dwelling place or residential rental property . . . . 'Home improvement' does not include: (A) The construction of a new home . . . ." General Statutes § 20-419 (4). The Home Improvement Act, however, does not define what constitutes construction of a new home.

Thus, in order for the defendant to be liable under the Home Improvement Act, the site work at issue must fall within the definition of home improvement and outside of the scope of the exception for construction of a new home. Although what constitutes a home improvement versus a new home construction is not clearly explained by this statutory language, this court has previously considered the distinction between those two statutory categories in *Rizzo Pool Co.* v. *Del Grosso*, supra, 232 Conn. 666, and provided a definition for the scope of the new home exception. In *Rizzo*, the defendants signed a contract with the plaintiff to install a swimming pool on their property while their new home was under construction. Id., 669. After a dispute arose, the plaintiff initiated an action for breach of contract. Id., 670. The trial court in *Rizzo* held that the defendants could not assert a special defense under the Home Improvement Act on the ground that the new home exception applied because installation of the pool was part of the construction of a new home. Id., 671–72.

On appeal, in considering whether the pool installation was part of the construction of the new home, we interpreted the new home exception as requiring that the pool installation and the construction of the home "were so interrelated, temporally or otherwise, that the installation of the pool constituted an integral part of '[t]he construction of a new home' under § 20-419 (4) (A)." Id., 678. In interpreting the language of the new home exception, we relied on both its relationship to other statutes—namely, General Statutes §§ 47-116 through 47-121, titled "New Home Warranties"—and the statute's legislative history. Id., 678–80. Applying this definition of the new home exception to the undisputed factual findings, we held that the pool installation did not fall within the scope of this definition. Id. Specifically, we noted that the "pool installation contract was completely separate and distinct from the defendants' home construction contract, and the two contracts were to be performed by entirely different and unrelated contractors. Moreover, the documents that comprise[d] the contract for the construction of the swimming pool contain[ed] no indication that the pool was to have been installed at any particular stage of the new home construction, or even that it was to have been installed prior to the completion of the new home." Id., 677–78.

Applying this definition to the undisputed underlying factual findings regarding the site work at issue in the present case, we conclude that the work performed by the defendant clearly fell within the new home exception. Specifically, although the contract between the plaintiff and the defendant in the present case was separate from the home construction contract between the plaintiff and Golden Hammer, the work the defendant agreed to perform was within the scope of the work contemplated by the Golden Hammer home construction contract. Indeed, many of the projects that the defendant was contracted to perform, such as digging the foundation hole and well trenches, installing the septic tank, building the retaining walls, constructing the driveway, and conducting the landscaping, were expressly included in the home construction contract.[6] By contract, then, the work the defendant agreed to perform would have been completed by the new home construction contractor if the plaintiff had not elected to subcontract that portion of the new home construction contract. Therefore, we agree with the Appellate Court's assessment that, unlike in *Rizzo*, both of the agreements in the present case essentially relate to the same work.

Additionally, Golden Hammer's work could not have proceeded independently from the work of the defendant. For example, the construction work performed by Golden Hammer was entirely dependent, both physically and temporally, on the defendant's foundation work. Although this case involved different contractors,

it cannot be said that their work was unrelated. The plaintiff himself testified that the defendant "was asked to stay in close contact with [Mawdsley] . . . ." Indeed, testimony throughout the trial revealed that the defendant had to communicate consistently with Golden Hammer throughout the performance of the site work, which shows how interrelated the site work was with the overall home construction. Moreover, the contract with the defendant clearly contemplated the construction of a new home and specified that the defendant was to complete his work within one year for the purpose of facilitating that construction. Both the close timing and the extensive communication required between the contractors in the present case bolster our conclusion that the defendant's work was sufficiently "interrelated, temporally or otherwise," with the construction of the home. *Rizzo Pool Co*. v. *Del Grosso*, supra, 232 Conn. 678.

Finally, we also agree with the Appellate Court that "the nature of the construction work itself, namely, its relationship to the habitability of the home," is another consideration relevant to determining whether the work is a home improvement or part and parcel of new home construction. *Winakor* v. *Savalle*, supra, 198 Conn. App. 806. Much of the work that the defendant performed in the present case, including hammering out a ledge for the foundation, digging a trench for the well's electrical system, building retaining walls, and installing the septic tank, contributed directly to the habitability of the home. See, e.g., *Laser Contracting, LLC* v. *Torrance Family Ltd. Partnership*, 108 Conn App. 222, 227–29, 947 A.2d 989 (2008) (attachment of mobile home to new foundation fell within new home exception to Home Improvement Act). Although the plaintiff correctly notes that the defendant's work relating to the driveway and the landscaping was not required prior to the issuance of a certificate of occupancy, evidence adduced at trial showed that this work was necessary in order for the home to comply with the town zoning requirements. Thus, when we apply the definition of the new home exception to the underlying facts, it is clear that the work performed by the defendant fell within the new home exception.

The plaintiff also argues that, without recourse under the Home Improvement Act, there would be no real remedy for consumers who have contracted with unscrupulous contractors in the defendant's position. This is not so. The legislature has created such a remedy in the New Home Act, which applies to "any agreement between a new home construction contractor and a consumer for the construction or sale of a new home or any portion of a new home prior to occupancy . . . ." General Statutes § 20-417a (3). Prior to the passage of the New Home Act, the legislature noted an "anomaly" that resulted from the fact that new home construction was not covered by the Home Improvement Act and, thus,

left a gap in adequate coverage for consumers. See Conn. Joint Standing Committee Hearings, General Law, Pt. 1, 1999 Sess., p. 17–18, remarks of Attorney General Richard Blumenthal. Indeed, the legislature noted that "[t]he purpose of this new home construction guarantee bill is similar to the bill that [the legislature] adopted . . . ten years [beforehand] for home remodelers." 42 H.R. Proc., Pt. 9, 1999 Sess., p. 3309, remarks of Representative Arthur J. Feltman. Although the plaintiff may have had recourse against the defendant under the New Home Act, that claim was abandoned before the Appellate Court. See footnote 4 of this opinion. The plaintiff's claim under the Home Improvement Act is unavailing.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] By this point, the plaintiff had already paid the defendant approximately $53,000 on the original contract.

[2] In its memorandum of decision, the trial court listed numerous deficiencies in the defendant's performance. "First, the defendant did not properly backfill the foundation, using large rocks and boulders instead of dirt to support the foundation. . . . Additionally, the footing drains for the foundation were improperly installed, causing flooding in the basement of the house.

"Second, the defendant improperly installed the septic system because it was backfilled with rocks instead of sand and too close to the surface, making it more likely [that] it could be crushed. That is exactly what happened in 2014, when the defendant crushed the top of the tank, requiring another tank to be installed in April, 2014. This tank too was deficient and required replacing because the line running from it to the house had a break in it. . . . The defendant admitted in his posttrial brief that he crushed the septic tank.

"Third, the defendant improperly constructed the retaining walls in the front and back of the house because they leaned, contained gaps, and washed out due to improper backfilling.

"Fourth, the defendant improperly installed the patio. Although not specified in the contracts, the defendant agreed to construct the patio. Yet, his installation used rocks instead of sand as backfill, causing the patio to settle improperly.

"Fifth, the defendant did not grade and seed the property when he left the site in April, 2014. Instead, he left the property a mess with materials scattered around the property, trees knocked down, and rocks located throughout the site.

"Sixth, the defendant improperly installed the propane tank. Although not specified in the contracts, the defendant agreed to install and backfill the tank. Yet again, he used rocks rather than sand as backfill for the tank and pipe, causing the propane to leak from the pipe and damaging the tank. After inspection, the entire tank and pipe were replaced.

"Seventh, the defendant improperly installed the well electrical line, using rocks instead of sand as backfill. Consequently, the electric line failed and needed replacement.

"Eighth, the defendant did not properly reclaim or grade the driveway. The driveway was at a grade higher than 8 percent, causing the plaintiff to regrade it. Further, the lower half of the driveway was not reclaimed with asphalt because it was left as dirt."

[3] Because the trial court found a breach of an enforceable contract, it concluded that the plaintiff was not entitled to recover under a theory of unjust enrichment, as alleged in count two of the complaint. See, e.g., *Gagne* v. *Vaccaro*, 255 Conn. 390, 401, 766 A.2d 416 (2001) (lack of remedy under contract is precondition for recovery under theory of unjust enrichment).

[4] The Appellate Court, however, concluded that the plaintiff had abandoned any claim under the New Home Act by failing to assign error to the trial court's conflation of those two counts. *Winakor* v. *Savalle*, 198 Conn. App. 792, 797 n.4, 234 A.3d 1122 (2020). The plaintiff does not contest this conclusion in the present appeal and has chosen, instead, to argue only that the work conducted by the defendant falls within the purview of the Home Improvement Act.

[5] We note that, in some cases involving the Home Improvement Act, the parties might dispute the trial court's underlying findings of fact. Appellate review of those issues would call for a clearly erroneous standard of review. See, e.g., *JPMorgan Chase Bank, National Assn.* v. *Virgulak*, 341 Conn. 750, 760, 267 A.3d 753 (2022). Because the parties in the present case do not dispute the trial court's underlying findings of fact, the question now before us—the application of the statutory language to the trial court's factual findings—is a question of law. See, e.g., *Meadows* v. *Higgins*, supra, 249 Conn. 162.

[6] Our review of the record reveals only one minor aspect of the work under the defendant's contract that was not contained within the scope of the new home construction contract, namely, the construction of the plaintiff's patio. The patio was first mentioned when the parties reached an oral agreement following the execution of the first written contract. Although the plaintiff's principal brief to this court relies on the defendant's agreement to build the patio as a basis to distinguish the defendant's work as a home improvement, the plaintiff did not raise that argument before the Appellate Court. The Appellate Court's opinion, in turn, contained no analysis of whether defects in the patio warranted independent relief under the Home Improvement Act. See generally *Winakor* v. *Savalle*, supra, 198 Conn. App. 806–10. As a result, we decline to address that same question for the first time in the present appeal.