T. CHRISTOPHER KILLION ET AL. *v.*
IAN MARTIN DAVIS
(SC 16417)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued April 26—officially released July 31, 2001

*Ronald P. Mysliwiec,* with whom was *Steven D. Ecker,* for the appellants (plaintiffs).

*Jonathan Turley,* pro hac vice, with whom were *James F. Stapleton* and, on the brief, *Thomas J. O'Neill,* for the appellee (defendant).

*Opinion*

NORCOTT, J. This appeal requires us to determine whether the attorney trial referee's conclusion that the defendant, Ian Martin Davis, personally was liable to the plaintiffs, T. Christopher Killion and Brad J. Felenstein, was supported by the referee's findings of fact. The trial court rendered judgment in accordance with a report issued by the attorney trial referee recommending that the defendant personally be held liable for breach of an employment contract. The Appellate Court reversed, concluding that the attorney trial referee's conclusion was not supported by the facts in the trial

referee's report or in the record as a whole. *Killion* v. *Davis*, 59 Conn. App. 358, 361, 757 A.2d 632 (2000). We reverse the judgment of the Appellate Court.

The following relevant facts, based upon the attorney trial referee's findings, are aptly set forth in the Appellate Court decision. "The defendant and his wife were the sole shareholders of Sports Marketing Group, Inc., (Sports Marketing) and contracted to sell their stock to Times Mirror Magazine (Times Mirror) for more than $5 million. Prior to the sale to Times Mirror, the defendant, who was also the president of Sports Marketing, informed the plaintiffs in separate conversations that they would each receive $100,000 if they remained with Sports Marketing for three years following the sale. The defendant and Times Mirror agreed that Times Mirror would withhold a portion of the purchase price due to the defendant and pay the plaintiffs directly at the end of three years. Although the plaintiffs remained employed at Sports Marketing for the requisite three years, they did not receive the $100,000 promised to them.

"The plaintiffs thereafter brought an action against the defendant rather than Sports Marketing or Times Mirror to enforce the oral promise. The matter was heard by an attorney trial referee, who issued a report concluding that the defendant should pay the plaintiffs $100,000 each plus prejudgment interest. While the attorney trial referee found that the defendant, in his conversations with the plaintiffs, never specifically referenced his personal responsibility to pay the bonuses, the trial referee did conclude that it was reasonable for the plaintiffs to assume that the defendant would be personally responsible for the payment of the money. The trial referee also concluded that the plaintiffs remaining employed for three years was for the benefit of the defendant in his sale of stock to Times Mirror and therefore evidenced the defendant's personal

responsibility to pay the bonuses. The [trial] court adopted the report in its entirety when it rendered judgment." Id., 359–60.

The defendant appealed[1] claiming that the facts, even as found by the attorney trial referee in his report, did not support the conclusion that the defendant had intended personally to be liable for the plaintiffs' bonuses. The Appellate Court agreed and, accordingly, reversed the judgment of the trial court and directed judgment for the defendant. Id., 362. The Appellate Court concluded that the evidence did not support the conclusion that the defendant personally was liable on the promise, "especially when the facts as found in the report state[d], specifically, that the defendant never referenced his personal responsibility." Id. Thereafter, we granted the plaintiffs' petition for certification to appeal limited to the following issue: "Whether the Appellate Court properly concluded that the attorney trial referee incorrectly ruled that the defendant was personally liable to the plaintiffs for the claimed bonuses?" *Killion* v. *Davis*, 254 Conn. 948, 762 A.2d 902 (2000).[2] We conclude that the facts found in the report support the attorney trial referee's conclusion that the defendant was under a personal obligation to pay the employment bonuses.

Cases may be referred to an attorney trial referee for a finding of facts where the parties are not entitled to

---

[1] In addition to the issue of personal liability, the defendant also claimed on appeal that the trial court improperly had "(1) concluded that the oral agreement to pay the plaintiffs was not barred by the statute of frauds, (2) failed to correct factual and legal errors in the attorney trial referee's report and (3) abused its discretion by awarding prejudgment interest." *Killion* v. *Davis*, supra, 59 Conn. App. 359 n.1. Because of its conclusion on the issue of personal liability, the Appellate Court did not reach the defendant's other claims. Id.

[2] We note that, while the certified issue refers to the propriety of the attorney trial referee's ruling, judgment actually was rendered by the trial court in favor of the plaintiffs.

a trial by jury and where the parties consent to such a referral. Practice Book §§ 19-2 and 19-3. "The report of . . . [an] attorney trial referee shall state, in separate and consecutively numbered paragraphs, the facts found and the conclusions drawn therefrom. . . ." Practice Book § 19-8 (a). "While the reports of [attorney trial referees] in such cases are essentially of an advisory nature, it has not been the practice to disturb their findings when they are properly based upon evidence, in the absence of errors of law, and the parties have no right to demand that the court shall redetermine the fact thus found." (Internal quotation marks omitted.) *Seal Audio, Inc.* v. *Bozak, Inc.*, 199 Conn. 496, 508, 508 A.2d 415 (1986).

"A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. . . . This court has articulated that attorney trial referees and factfinders share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court." (Citations omitted; internal quotation marks omitted.) *Elgar* v. *Elgar*, 238 Conn. 839, 848–49, 679 A.2d 937 (1996).

"Although it is true that when the trial court reviews the attorney trial referee's report the trial court may not retry the case and pass on the credibility of the witnesses, the trial court must review the referee's entire report to determine whether the recommendations contained in it are supported by findings of fact in the report. It is also true that the trial court cannot accept an attorney trial referee's report containing legal conclusions for which there are no subordinate facts." *Post Road Iron Works, Inc.* v. *Lexington Development*

*Group, Inc.*, 54 Conn. App. 534, 541, 736 A.2d 923 (1999). "If the attorney referee's ruling was not legally and logically correct, the trial court may reject the report." (Internal quotation marks omitted.) *SFP Tisca* v. *Robin Hill Farm, Inc.*, 244 Conn. 721, 727, 711 A.2d 1175 (1998).

Our review of the report and the record persuades us that the conclusions reached by the attorney trial referee, and accepted by the trial court, are adequately supported by the subordinate facts found. First, the manner in which the transaction between the defendant and Times Mirror was structured suggests that the funds earmarked for the compensation payments were controlled by, and belonged to, the defendant. With regard to the sale of Sports Marketing, it is clear that a portion of the purchase price was withheld to fund the " 'incentive compensation' " payments to the plaintiffs. Specifically, the purchase price was reduced by $154,000, the value at that time of the $200,000 amount that was to be paid to the plaintiffs at the end of three years. The attorney trial referee found that the purpose in structuring the deal in this manner was to provide a financial benefit to the defendant. The parties eliminated any reference to the compensation payments in the purchase documents in order to minimize the defendant's tax obligations and maximize Times Mirror's tax deduction for the purchase. On the basis of the defendant's own testimony, the attorney trial referee concluded that Times Mirror agreed to the reduction in purchase price because it "didn't care how the defendant spent *his* money." (Emphasis added.)

In addition, the attorney trial referee found that the deal was structured in such a way that, in the event that the plaintiffs did not remain with Sports Marketing for three years, Times Mirror would be required to refund any balance of the withheld funds to the defendant. The attorney trial referee found that neither plain-

tiff participated in, or was aware of, the details of the agreement between Times Mirror and the defendant. Thus, even though Times Mirror may have been required to make the payments pursuant to its agreement with the defendant, we agree that Times Mirror merely acted as a payment mechanism through which the defendant's funds would pass. The attorney trial referee's report supports a conclusion that the responsibility for paying the plaintiffs belonged to the defendant.

Second, there is the matter of the litigation in federal court that transpired between the defendant and Times Mirror subsequent to the sale of Sports Marketing.[3] The litigation arose out of a dispute between the defendant and Times Mirror regarding the financial condition of Sports Marketing, but was unrelated to the bonuses owed to the plaintiffs. The parties eventually settled the litigation by stipulation, part of which required Times Mirror to establish an escrow fund in the amount of $150,000 to cover the plaintiffs' claims. The escrow funds would have been paid to the defendant in the event that the plaintiffs were unsuccessful in their claim to recover the bonuses from him. Notably, the stipulation provided for the release of Times Mirror and Sports Marketing from any liability with respect to this action between the defendant and the plaintiffs. Once again, the plaintiffs were not privy to the settlement negotiations between Times Mirror and the defendant, the subject of which controlled the fate of the plaintiffs' payments. These findings demonstrate that the defendant, and not Sports Marketing or Times Mirror, maintained control over the compensation payments. As the attorney trial referee concluded, it was, therefore, rea-

---

[3] We note that the opinion of the Appellate Court does not address this fact.

sonable for the plaintiffs to assume that the defendant would be the one legally responsible for the payments.[4]

On the basis of the report, the attorney trial referee's conclusion that the defendant personally was liable for the plaintiffs' claim was legally and logically sound. Our decision, however, should not be read to suggest that corporate officers generally are required to disclaim personal liability *whenever* making a promise for an employment bonus. Rather, the facts in the present case demonstrate the defendant's complete control over the funds, regardless of the entity designated as the payment mechanism. We conclude that in this case, the

[4] The defendant claims that the settlement agreement is irrelevant to the issue on appeal because the settlement, which occurred in 1994, has no bearing on the intent of the parties' 1989 oral contract, and it did not reference any liability running from the defendant to the plaintiffs. We disagree.

Although the settlement could not possibly have had an actual effect on the terms of a contract executed five years prior to its inception, the settlement can be utilized to interpret the intent of the contract. "The intention of the parties manifested by their words and acts is essential to determine whether a contract was entered into and what its terms were." (Internal quotation marks omitted.) *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 199, 520 A.2d 208 (1987), overruled in part on other grounds, *Curry* v. *Burns*, 225 Conn. 782, 786, 626 A.2d 719 (1993). Because the terms of the contract in the present case are in dispute, specifically, who was obligated to pay the bonuses, the attorney trial referee reasonably looked to the settlement agreement as a means of determining the parties' intentions.

Specifically, the provisions of the settlement that provided for a fund to cover the bonus payments, the possible return of that fund to the defendant, and the release of Times Mirror and Sports Marketing from liability for the plaintiffs' claim are all relevant to the question of whom the parties intended to issue the bonus payments. The attorney trial referee even concluded that, "[e]ven if arguendo, [Times Mirror] had assumed the obligation of the payments to the plaintiffs, the stipulation ending the federal litigation returned the obligation to the defendant."

In addition, the attorney trial referee explicitly mentioned the relevance of the settlement agreement. In a motion to correct the findings of fact, the defendant objected to the introduction of the settlement agreement. The attorney trial referee refused to correct this finding because he found it "relevant to the issues at bar." We agree and conclude that the settlement is relevant to the resolution of this case and, therefore, the attorney trial referee properly discussed its contents.

cumulative facts as found by the attorney trial referee amply support his conclusion that the defendant personally was liable.

The judgment of the Appellate Court is reversed with respect to the issue of personal liability and the case is remanded to that court for further proceedings regarding the remaining issues on the defendant's appeal.

In this opinion the other justices concurred.