[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case involves a dispute between a subcontractor and a general contractor which was tried by an attorney trial referee. The plaintiff is The Centurion Group, LLC, which had a contract with the defendant, CT Page 14528 HRH/ATLAS Construction, Inc. (Atlas), the general contractor, to perform plumbing, heating, air conditioning and fire protection services in connection with a major renovation to the Central Connecticut Coast YMCA. This building is owned by State Street Bridgeport Limited Partnership (State Street), and is located at 651 State Street in Bridgeport. The other defendants are State Street, and Liberty Mutual Insurance Company (Liberty Mutual). Liberty Mutual furnished a payment bond in the amount of $6,625,000, in which Atlas is the principal and Liberty Mutual is the surety.
The revised complaint against Atlas, which is dated July 16, 1999, is in two counts. In the first count, the plaintiff alleges that it performed services and supplied material in accordance with its written contract with Atlas dated April 16, 1998, but that it withdrew from further work on the project on October 16, 1998, because the defendant had refused to make timely payments for its work and materials as called for in the contract. The plaintiff also alleges that it is owed a balance of $284,492.47 on the contract. In the second count, the plaintiff alleges that it is owed that same amount under the theory of unjust enrichment. The third and fourth counts are directed against the owner, State Street, and the surety, Liberty Mutual, respectively, and claim that these defendants have failed to pay the plaintiff what it is owed.
The defendant Atlas denied the material allegations of the complaint and filed several special defenses. In the first special defense, this defendant alleges that the work performed by the plaintiff was defective and incomplete. In the second special defense, it is claimed that the plaintiff wrongfully abandoned the project. In the third special defense, the defendant alleges that the plaintiff cannot recover under the theory of unjust enrichment because it had an express written contract with the defendant.
The defendant Atlas also filed a counterclaim alleging that the plaintiff breached the contract in a number of ways, including failing to furnish necessary materials and manpower, interfering with the timely performance of work by other subcontractors, abandoning the job, and failing to properly supervise the project, all of which obliged the defendant to expend money to hire other subcontractors to finish the project and to correct the plaintiff's faulty workmanship.
The defendant State Street denied the material allegations of the complaint and filed a special defense claiming it was not liable to the plaintiff to the extent it had paid its general contractor, Atlas. The bonding company, Liberty Mutual, denied that it owed any money to the plaintiff and filed special defenses. In the first such defense, Liberty Mutual claims that the work performed by the plaintiff was done in an CT Page 14529 unworkmanlike and incomplete fashion. In the second special defense, this defendant claims that the plaintiff wrongfully abandoned the project.
The case was referred to Attorney Bernadette Coomaraswamy, an attorney trial referee, in accordance with General Statutes § 52-434(a) and Practice Book § 19-2. The referee submitted a report dated March 20, 2001, finding that: (1) the contract did not provide that the general contractor, Atlas, was obliged to pay the plaintiff only after it received payment from the owner, a "pay when paid" theory, but rather the contract obliged Atlas to pay the plaintiff by the 25th day of the month after receipt of a monthly requisition submitted by the plaintiff; (2) the plaintiff did not wrongfully withdraw from the project on October 16, 1998, but, to the contrary, left because Atlas did not make timely payments to the plaintiff; (3) the work performed by the plaintiff was not defective or unworkmanlike; (4) construction delays involving the vent system and shower units were not attributable to the plaintiff but were occasioned by change orders and involvement by the Connecticut Housing and Finance Authority; (5) the plaintiff did not prove his claim for "lost profits," as it obtained a new job on the day after it left the Bridgeport YMCA project; and (6) the plaintiff is entitled to prejudgment interest as authorized by General Statutes § 37-3a because Atlas and Liberty Mutual had wrongfully withheld payment to the plaintiff when it was due.
The attorney trial referee concluded that: (1) the plaintiff sustained damages because the defendant Atlas had breached the subcontract in question by not paying the plaintiff the amounts due it in a timely fashion; and (2) Atlas did not prove its counterclaim because the plaintiff's work was not defective and the plaintiff did not wrongfully abandon the project. The referee recommended that judgment enter in favor of the plaintiff for $284,390, plus prejudgment interest from October 16, 1998, the date when payment was due the plaintiff.[1]
The attorney trial referee filed an amended report on April 20, 2001, in response to requests by both the plaintiff and State Street, in which she acknowledged that it was State Street that was holding $72,000 in escrow, not Liberty Mutual, as originally stated. Thus, State Street's liability is limited to $72,000, and the defendants Atlas and Liberty Mutual are responsible for $212,390 of the recommended award to the plaintiff of $284,390.
The attorney trial referee filed an additional report dated May 17, 2001, in response to a request by Atlas for "findings," purportedly as authorized by Practice Book § 19-9. As the referee correctly pointed out, this request for "findings" should be filed before an attorney trial referee's report is rendered, not afterwards. Nevertheless, the referee CT Page 14530 said she would respond to this request by Atlas for findings, and then made the following clarifications: (1) under the terms of the contract between the plaintiff and Atlas, the plaintiff was entitled to payment for both labor and material upon its submitting of requisitions, not just for labor; (2) the defendant Atlas breached its contract with the plaintiff by not making timely payments; and (3) the fact that the plaintiff accepted some late payments from Atlas did not amount to the plaintiff's waiving its right to get paid on time in accordance with the contract.
The defendant Atlas filed objections[2] dated April 11, 2000, to the attorney trial referee's report. The defendant claims that the attorney trial referee erred in that: (1) Atlas was not awarded a credit of $40,427.81 for payments made to the plaintiff's subcontractors; (2) the referee misinterpreted the contract and the prior course of dealings regarding when payment was due the plaintiff; (3) the referee failed to find that the plaintiff wrongfully abandoned the project and thus breached its contract with Atlas; (4) the plaintiff waived its right to receive monthly payments because it accepted late payments; (5) the sum of $29,465 was awarded to the plaintiff which represents a "double recovery;"[3] (6) any delays or problems involving vents, fan coils or shower units were caused by the owner, State Street, and not by Atlas; (7) Atlas incurred additional expenses of approximately $800,000 more than the plaintiff's claim in order to complete the project after the plaintiff stopped work; (8) the referee should not have recommended prejudgment interest because there was no bad faith or wrongful conduct on the part of Atlas; and (9) Atlas was entitled to damages based on its counterclaim.
Practice Book § 19-17(a) concerns the function of this court in reviewing reports of attorney trial referees and provides that: "[t]he court shall render such judgment as the law requires upon the facts in the report. If the court finds that the . . . attorney trial referee has materially erred in its rulings or that there are other sufficient reasons why the report should not be accepted, the court shall reject the report and refer the matter to the same or another . . . attorney trial referee . . . for a new trial or revoke the reference and leave the case to be disposed of in court."
The case of Killion v. Davis, 257 Conn. 98, 102-103, 776 A.2d 456
(2001), holds that the court's role in reviewing an attorney trial referee's report is as follows: first, "the trial court must review the referee's entire report to determine whether the recommendations contained in it are supported by findings of fact in the report." (Internal quotation marks omitted.) Id., 102. Second, the court must insure that the report does not contain "legal conclusions for which CT Page 14531 there are no subordinate facts." (Internal quotation marks omitted.) Id. Third, the report must be reviewed to determine if it is "legally and logically correct." (Internal quotation marks omitted.) Id. In this case, however, a transcript of the trial before the attorney trial referee was provided and, therefore, a preliminary task for this court is to determine whether there is evidence in the record to substantiate the factual findings made by the referee. See John M. Glover Agency v. RDBBuilding, LLC, 60 Conn. App. 640, 646, 760 A.2d 980 (2000).
Other principles governing attorney trial referee reports provide that: "A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees." (Citations omitted.) Wilcox Trucking, Inc. v. MansourBuilders, Inc., 20 Conn. App. 420, 423, 567 A.2d 1250, cert. denied,214 Conn. 804, 573 A.2d 318 (1989). The findings of fact in a contract action, such as this case, "should be overturned only when they are clearly erroneous." Wilcox Trucking, Inc. v. Mansour Builders, Inc., Id., 425. A fact-finder's recommendations should be accepted when "there is nothing that is unreasonable, illogical or clearly erroneous in the findings of the fact finder and the reasonable inferences that may be drawn therefrom." Id.
The first issue is whether there is support in the record for the referee's findings of fact that were challenged by the defendant. The objections involve two distinct claims by the defendant: first, did the defendant make timely payments to the plaintiff and, second, was the plaintiff justified in leaving the project when it did.
A review of the transcript indicates that there is sufficient support in the record for the referee's key findings that the defendant did not pay the plaintiff when it was obliged to do so under the contract and, thus, the plaintiff was justified in leaving the job.[4]
It is quite evident that the referee chose to believe the testimony offered by the plaintiff and not that of the defendant regarding timeliness of payment and the caliber of the work. "The finder of fact is in a better position to determine the credibility of witnesses and the weight to be accorded their testimony." Beizer v. Goepfert,28 Conn. App. 693, 706, 613 A.2d 1336, cert. denied, 224 Conn. 901,615 A.2d 1044 (1992), cert. denied, 507 U.S. 973, 113 S.Ct. 1416,122 L.Ed.2d 786 (1993). Moreover, "[w]hether and on what terms a contractual commitment has been undertaken are ultimately questions of fact for the trier of fact." Presidential Capital Corp. v. Reale, 231 Conn. 500, 507,652 A.2d 489 (1994). In this case, section 10.1a of article 10 of the CT Page 14532 contract between the plaintiff and Atlas pertaining to payment provides that the plaintiff would be paid on or before the 25th day of each month after a requisition was filed, a provision that refutes Atlas' contention that it had a "pay when paid" agreement with the plaintiff. The referee determined that the defendant breached the contract by failing to pay the plaintiff when such payments were due. Thus, she recommended that the plaintiff recover the money that was due it for work and material already furnished and supplied to Atlas. That recommendation is supported by the referee's findings of fact. Furthermore, the referee's conclusions follow legally and logically from her findings of fact.
Based upon a review of the report regarding the counterclaim by the defendant, the court finds that the attorney trial referee's conclusions and recommendations are supported by the subordinate facts that she found. The ultimate conclusion that the defendant is not entitled to recover any money from the plaintiff on its counterclaim follows logically and legally from the findings by the attorney trial referee that the defendant had breached the contract by not paying its subcontractor, the plaintiff, the money that was due. The attorney trial referee did not recommend compensation for lost profits, but by recommending a recovery of $284,390, she did attempt to put the plaintiff in the same position that it would have been in had the defendant not breached the contract. L.F. Pace Sons, Inc. v. Travelers IndemnityCo., 9 Conn. App. 30, 41, 514 A.2d 766, cert. denied, 201 Conn. 811,516 A.2d 886 (1986). The referee recommended judgment for the plaintiff for the balance due when the plaintiff left the job. This amounts to approximately $186,000, plus about $69,000 for the 10% retainage, plus approximately $29,000 as a credit for cast iron pipe purchased by the plaintiff but left at the job site when the plaintiff discontinued working there. These three sums total $284,492.47, the amount recommended by the attorney trial referee.
The referee did not recommend paying the plaintiff for the balance due on the contract, approximately $840,000, or $84,000, claimed by the plaintiff as a loss of profits of 10%. Rather the referee recommended payment of just what was owed the plaintiff when it left the job site, plus the retainage, and reimbursement for the cast iron pipe left for the defendant Atlas.
The referee also recommended interest as authorized by General Statutes § 37-3a for "damages for the detention of money after it becomes payable. . . ." The awarding of prejudgment interest is clearly an issue for the trier of fact. Foley v. Huntington Co., 42 Conn. App. 712, 738,682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996). 10% interest on $284,492.47, from October 16, 1998 to the date of judgment, amounts to $85,893.35. CT Page 14533
Thus, no material error in the report has been found, and there is no other sufficient reason for rendering the report unacceptable. See Practice Book § 19-17(a). Accordingly, judgment enters in favor of the plaintiff against the three defendants in the amount of $370,385.82, which includes prejudgment interest. State Street's liability for this judgment is limited to $72,000. Judgment also enters in favor of the plaintiff with respect to the defendant's counterclaim, in accordance with the recommendation by the attorney trial referee.
Costs are to be taxed in favor of the plaintiff by the clerk of this court in accordance with General Statutes § 52-25 and Practice Book § 18-5.
So Ordered.
Dated at Stamford, Connecticut, this 23rd day of October, 2001.
William B. Lewis, Judge