[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case, which began in December, 1992, was originally tried in 1995 by Mary E. Sommer, Esq., an attorney trial referee. The referee described the case as a foreclosure of three judgment liens totaling approximately $391,000 by the holder of the liens, the plaintiff, Farhad Moasser.[1]
The liens were recorded against the onehalf interest of the named defendant, James A. Becker, in property on 37 Ridge Tree Lane in Stamford, which was owned jointly by the defendant and his wife, Judith Becker.
Attorney Trial Referee Sommer noted in her report dated July 7, 1995 that the' plaintiff's judgment liens were recorded after a mortgage from the defendants to the law firm, Duel and Holland, was recorded on February 16, 1988, for $15,000. This mortgage was given in consideration of legal services to be rendered by Duel and Holland involving a claim of fraud against Mr. Becker. The plaintiff contended that the law firm's mortgage was invalid because it involved future' services, but the referee determined that the Duel and Holland mortgage was valid and enforceable and had priority over the plaintiff's judgment liens, which were recorded on April 13, 1988, August 12, 1988 and April 28, 1989, respectively.
Referee Sommer also determined that a mortgage from the Beckers to Connecticut National Bank (CNB) (also known as Shawmut Bank at the time) was invalid and unenforceable because CNB, which was a defendant in this action, had been defaulted for failure to file an appearance. The referee also ruled that this mortgage was invalid for another reason in that it had been executed before the execution of the underlying note, and hence there was no consideration for the mortgage. This court entered judgment against Mr. Becker on November 2, 1995, in accordance with the report and CT Page 539 recommendation of the attorney trial referee. This meant that the Duel and Holland mortgage took precedence over the plaintiff's three judgment liens and that the CNB mortgage was invalid and unenforceable. No motion to open this judgment was ever filed.
This judgment was partial and not final, however, because on September 13, 1996, Judge Stevens granted the motion of Judith Becker to intervene as a party defendant "on a going forward basis and [she] should be estopped from acquiring a reconsideration of adjudicated issues." Judge Stevens added that Ms. Becker is "precluded from relitigating the validity of the mortgage originally executed in favor of [CNB] or from relitigating any other matters which are the law of the case."
The plaintiff then filed an amended complaint dated October 2, 1996, adding Ms. Becker, and referring to her as owning "an interest in and currently in possession of" the subject premises. On August 13, 1997, Judge Hickey ruled that Judge Stevens' decision of September 13, 1996, regarding the invalidity of the CNB mortgage and a similar ruling by attorney trial referee Sommer could not be challenged by Ms. Becker as these rulings constituted the law of the case.
On May 24, 1999, the plaintiff impleaded Jeanne Altschul, Trustee, as a party defendant and filed an amended complaint of that date, which is the operative complaint in this action. The plaintiff alleged that Ms. Altschul, trustee, claimed encumbrances on the subject premises by virtue of "purported" assignments of the two mortgages from the Beckers to Union Trust Company (UTC) in 1973, and to CNB in 1985, which assignments were dated April 5, 1994 and August 8, 1994, in the principal amounts of $64,000 and $56,996, respectively.
The plaintiff contended that the assignments were unenforceable because the: defendants were engaging in "a continuing plan intended to hinder, delay and defraud plaintiff in collection of his judgment lien." Jeanne Altschul, trustee, filed a counterclaim against the plaintiff and a cross complaint against the Beckers.[2] Ms. Altschul, trustee, as assignee, sought a foreclosure of the two mortgages, alleging that the Beckers were in default with respect to both mortgages and that her, assignments of the mortgages were recorded on June 23, 1994 and October 31, 1994, respectively, and had priority over the judgment liens being foreclosed by the plaintiff because the original mortgages had been recorded in 1973 and 1985, respectively.
The plaintiff filed several special defenses regarding the counterclaim. The plaintiff alleged that Ms. Altschul, trustee, knew that the Beckers were in default on the two mortgages, that the CNB mortgage had previously been ruled invalid and unenforceable and that Ms. Altschul CT Page 540 had joined in a conspiracy with the Beckers to defraud him and to prevent him from collecting the debt owed by Mr. Becker. The plaintiff also alleged that Ms. Altschul had "unclean hands."[3] Thus, the case, after the addition of Ms. Becker and Ms. Altschul, trustee, involved the determination of the priorities of the plaintiff's judgment liens as compared with the assignments of the two mortgages to Ms. Altschul, trustee.
The case was referred to Attorney Alfred H. Hoddinott, Jr., an attorney trial referee, in accordance with General Statutes § 52-434 (a)(4), as amended by Public Act No. 01-203, and by Practice Book § 19-2A. The referee conducted a trial, and, pursuant to Practice Book §19-4, submitted a report dated June 11, 2001, and a supplemental report dated July 25, 2001 relating to legal fees, in which he found that: (1) the mortgage to Duel and Holland was superior in time to the plaintiff's judgment liens as the previous attorney trial referee had ruled in 1995, and judgment by this court had entered on November 2, 1995, in accordance with the referee's recommendations; (2) the two mortgages from the Beckers to UTC in 1973 and to CNB in 1985 had both been assigned by the banks to Jeanne Altschul, trustee, in 1994; (3) Ms. Becker never made any mortgage or municipal tax payments after the mortgages were assigned to Ms. Altschul, trustee, but continued to live rent-free in the subject premises; (4) the CNB mortgage is unenforceable because, as Attorney Trial Referee Sommer had found, CNB had been defaulted in late 1994, had not moved to open the default and the attorney trial referee's ruling with respect to this mortgage represented the law of the case; (5) additionally, Ms. Becker had not introduced any evidence why the decision of the previous attorney trial referee and the judgment based thereon, which were the law of the case, should be overruled; (5) the CNB mortgage was also unenforceable for lack of consideration because it was executed nine days before the promissory note it purported to secure; (6) on December 12, 1994, both banks, including UTC, were defaulted by Judge D'Andrea for failing to appear at a special master's pretrial scheduled for December 8, 1994 (#135), which occurred prior to the trial before attorney trial referee Sommer, and neither bank ever moved to open or vacate the default; (7) Ms. Altschul's attempt to foreclose the two mortgages assigned to her should be denied because she did not have clean hands in that she knowingly participated with the Beckers in a fraudulent scheme to deny the plaintiff recovery of his judgments;[4] (8) incident to divorce proceedings between the Beckers, Mr. Becker purported to quitclaim his one-half interest in the subject premises to Judith Becker on October 31, 1994, but that deed should also be subordinated to the plaintiff's judgment liens as it was given to defraud the plaintiff of his ability to collect his judgments against Mr. Becker;[5] (9) the three judgement liens were introduced into evidence without objection and their validity was stipulated to; (10) the plaintiff had properly proved the CT Page 541 amount of his debt in accordance with General Statutes Practice Book § 23-18(a) by presenting an affidavit from his counsel setting forth the amount thereof; (11) the defenses submitted by the defendants in this case were presented solely for the purpose of delaying the plaintiff in his efforts to collect the judgments he had recovered in the federal court; and (12) in late December of 2000, the subject premises had a market value of approximately $575,000, based on the report of a real estate appraiser, and the debt to the plaintiff, including interest, was approximately $502,000.
The attorney trial referee concluded that: (1) the subject premises should be sold at auction in accordance with the plaintiff's claim for a foreclosure of his three judgment liens; (2) the Beckers and Jeanne Altschul, trustee, were obligated to pay the plaintiff's legal fees as authorized by General Statutes §§ 52-350f (3) and 52-400c (3)[6]
because the defenses interposed by those defendants were solely for the purposes of delay; (3) the legal fees incurred by the plaintiff amount to $19,043, and $8,662.50 for post-trial briefings and court appearances, both of which sums were reasonable; and (4) after expenses of sale, city of Stamford taxes, and legal fees awarded to the plaintiff, from the one-half portion of the property now or formerly owned by Mr. Becker, the lien of the law firm, Duel and Holland, should be paid first, and then the balance should be paid to the plaintiff, with Ms. Becker entitled to the other one-half of the proceeds after payment of taxes, costs of sale and attorney's fees to the plaintiff.
The two defendants, Ms. Becker and Ms. Altschul, trustee, filed objections[7] to the attorney trial referee's report.[8] The objections by the two defendants are identical and take issue with practically every one of the referee's findings of fact and conclusions. The defendants claim that the attorney trial referee erred in that: (1) the plaintiff never proved that he obtained valid judgments against Mr. Becker or the amount of his claim, and the defendants never stipulated or agreed that the plaintiff had a valid interest in the subject premises; (2) Ms. Becker paid for maintenance expenses after the mortgages were assigned to Ms. Altschul, trustee; (3) the amended complaint of May 24, 1999 added allegations by the plaintiff of fraud and conspiracy and superceded the original complaint, which were tried to Attorney Trial Referee Sommers, thus permitting Ms. Becker to contest the validity of the CNB mortgage and other issues;[9] (4) the new amended complaint also cured or vacated any defaults previously entered against UTC or CNB which had been based on the original complaints and the two mortgages and the assignments to Ms. Altschul, trustee, are therefore prior in right to the judgment liens being foreclosed by the plaintiff in this present action; (5) fraudulent conveyance and conspiracy had not been pleaded by the plaintiff and recovery can not be based on those theories; (6) the CT Page 542 plaintiff failed to properly apply General Statutes § 49-31 b (a);[10]
and (7) Judith Becker obtained her former husband's one-half interest in the subject premises in March of 1994 by way of a valid divorce judgment in this court; (8) any delay in processing this case was the fault of the plaintiff for not proceeding in the correct manner;[11] (9) any attorney fees to be awarded to the plaintiff only applied to Mr. Becker, not Ms. Becker, as he is the only debtor; and (10) this court lacked subject matter jurisdiction because the plaintiff did not have valid judgment liens.[12]
On July 5, 2001, well after the trial of this case, and also after the rendering of the attorney trial referee's report, Judith Becker moved (#205) for a mistrial on the ground that the attorney trial referee, during the course of the trial, "expressed his belief that there may have been a criminal conspiracy amongst some of the defendants. . ." The motion for a mistrial is denied because an objection to the qualifications of the attorney trial referee was not filed with the referee at the time of trial. LR Realty v. Connecticut National Bank,53 Conn. App. 524, 543, 732 A.2d 181, cert. denied, 250 Conn. 901,734 A.2d 984 (1999).[13]
Practice Book § 19-17(a) concerns the function of this court in reviewing reports of attorney trial referees and provides that: "[t]he court shall render such judgment as the law requires upon the facts in the report. If the court finds that the . . . attorney trial referee has materially erred in its rulings or that there are other sufficient reasons why the report should not be accepted, the court shall reject the report and refer the matter to the same or another . . . attorney trial referee . ., for a new trial or revoke the reference and leave the case to be disposed of in court."[14]
 Killion v. Davis, 257 Conn. 98, 102-103, 776 A.2d 456 (2001), holds that the court's role in reviewing an attorney trial referee's report is as follows: first, "the trial court must review the referee's entire report to determine whether the recommendations contained in it are supported by findings of fact in the report." (Internal quotation marks omitted.) Id., 102. Second, the court must insure that the report does not contain "legal conclusions for which there are no subordinate facts." (Internal quotation marks omitted.) Id. Third, the report must be reviewed to; determine if it is "legally and logically correct." (Internal quotation marks omitted.) Id. In this case, a transcript of the trial before the attorney trial referee was provided in accordance with Practice Book § 19-14 and, therefore, a preliminary task for this court is to determine whether there is evidence in the record to substantiate the factual findings made by the referee. CT Page 543
Other principles governing attorney trial referee reports provide that: "A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees." (Citations omitted.) Wilcox Trucking, Inc. v. MansourBuilders, Inc., 20 Conn. App. 420, 423, 567 A.2d 1250 (1989), cert. denied, 214 Conn. 804, 573 A.2d 318 (1990). A fact-finder's recommendations should be accepted when "there is nothing that is unreasonable, illogical or clearly erroneous in the findings of the fact finder and the reasonable inferences that may be drawn therefrom." Id.
This action seeks the foreclosure of judgment liens. Two attorney trial referees have found that the judgment liens are valid and enforceable and this court agrees.[15] Because there may well be equity for Ms. Becker in the subject premises, and in particular because the foreclosure action is not directed against Ms. Becker's one-half interest in the property, a foreclosure by sale is warranted.
The defendants have presented, in essence, two issues in their objections to the attorney trial referee's report. The first is whether Ms. Altschul, trustee, as assignee of the two mortgages to Union Trust Company and to Connecticut National Bank, which mortgages predate the recording of the plaintiff's judgment liens, has priority over the plaintiff.[16] The second is whether the attorney trial referee properly applied General Statutes §§ 52-350f (3) and 52-400c regarding attorney's fees.
As to the issue of priorities, the attorney trial referee determined as a fact that the assignment of the CNB mortgage to Ms. Altschul, trustee, does not have priority over the plaintiff's judgments liens. One of the reasons given was that the first attorney trial referee had so ruled and that was the law of the case. In addition, both Judge Stevens and Judge Hickey had ruled that the CNB mortgage was unenforceable and that Ms. Becker was prohibited from challenging this prior ruling. Moreover, both referees ruled that the CNB mortgage was not based on valid consideration because it had been executed a number of days prior to the date when the note was signed. As previously pointed out, UTC had been defaulted for a failure to appear at a court proceeding, and therefore its mortgage, subsequently assigned to Jeanne Altschul, trustee, does not have priority over the plaintiff's judgment liens.
There is sufficient evidence in the record to justify the ruling of the attorney trial referee that the assignments of the two mortgages have lost their priority over the plaintiff's liens.[17] It is quite evident that the attorney trial referee chose to believe the testimony offered by CT Page 544 the plaintiff and not that offered by Ms. Becker regarding conspiracy and fraud.[18] "The finder of fact is in a better position to determine the credibility of witnesses and the weight to be accorded their testimony."Beizer v. Goepfert, 28 Conn. App. 693, 706, 613 A.2d 1336, cert. denied,224 Conn. 901, 615 A.2d 1044 (1992), cert. denied, 507 U.S. 973,113 S.Ct. 1416, 122 L.Ed.2d 786 (1993).
The issue of the applicability of General Statutes §§ 52-350f and52-400c is resolved in favor of the plaintiff because it is the function of the trial court to determine whether the defenses presented by the defendants were "solely for delay, which is a question of fact." NewEngland Savings Bank v. Clark, 54 Conn. App. 121, 124, 734 A.2d 146
(1999). The attorney trial referee determined as a matter of fact that the defenses maintained by the defendant were solely for the purpose of delaying the plaintiff in his efforts to collect the judgments he received in the federal court and to foreclose his judgment liens.
Thus, judgment enters in favor of the plaintiff that the subject premises be sold by a committee of this court, Attorney Frank W. Livolsi, Jr., 1035 Washington Boulevard, Stamford, at 12:00 noon on Saturday, March 2, 2002, with advertising thereof in the Stamford Advocate the three previous Fridays. The committee is authorized to place a sign advertising such sale on the subject premises thirty days prior to the day of sale. A deposit of $50,000 in certified funds will be required from the successful bidder unless it is the plaintiff. The exact amounts of the Duel and Holland mortgage and the plaintiffs judgment liens and debt, including interest, will be determined at the foreclosure short calendar at the time the committee seeks approval of the sale.
Costs are to be taxed in favor of the plaintiff by the clerk of this court in accordance with General Statutes § 52-257, as amended byPublic Act No. 01-32, and Practice Book § 18-5.
So Ordered.
Dated at Stamford, Connecticut, this 14th day of January, 2002.
William B. Lewis, Judge Trial Referee.