[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case, which was tried to an attorney trial referee, involves a claim of an unauthorized withdrawal from a corporate checking account. The plaintiff, Michael J. Fitzgerald Contracting Co., Inc., filed a complaint against the defendant, People's Bank, containing two counts, breach of contract and negligence.
In the first count, the plaintiff alleges that it maintained a corporate checking account at a branch of the defendant bank in Greenwich, and that the plaintiff's sole shareholder, director and officer, Michael J. Fitzgerald, was the only signatory to that account. The plaintiff further alleges that in September, 1996, the defendant unlawfully debited that account in the amount of $160,600, without the knowledge or authorization of Mr. Fitzgerald. In the second count of the complaint, the plaintiff alleges that the defendant negligently permitted the account to be debited by another person while knowing that Mr. Fitzgerald was the only signatory on that particular account. CT Page 1214
The defendant denied the material allegations of the complaint and also filed three special defenses of contributory negligence, equitable estoppel and statute of limitations. In its first special defense, the defendant alleges that the plaintiff was negligent by failing to safeguard its taxpayer identification number, thereby allowing the plaintiff's corporate employees to have access to its bank accounts. In the second special defense, the defendant claims that any transfer from the plaintiff's checking account was authorized by an agent, officer, representative or employee of the plaintiff corporation, and that, in any event, any such funds were only transferred to another account also belonging to the plaintiff in the same bank. In the third special defense, the defendant contends that the plaintiff's claim is barred by certain statutes of limitation contained in the Uniform Commercial Code.
The defendant also filed a counterclaim with two counts, unjust enrichment and indemnity. In the first count of its counterclaim, the defendant asserted that the plaintiff had two separate deposit accounts at its bank, and that an authorized officer of the plaintiff corporation transferred $160,000 from one of the plaintiff's accounts to another, and hence the funds in question never left the control of the plaintiff "without an authorized withdraw."
In the second count of the counterclaim, the defendant alleged the plaintiff was negligent by permitting access to its taxpayer identification number and deposit accounts by its agents, employees and representatives. The defendant sought "full indemnification" from the plaintiff for any monetary losses it sustains.
The plaintiff denied the allegations of the counterclaim and filed a special defense to the counterclaim. The plaintiff contends that the defendant's request for indemnity is not possible because the parties never agreed to any such arrangement.
The defendant also filed a third party complaint against Kieran Power, described as Mr. Fitzgerald's nephew and an officer of the plaintiff corporation, seeking apportionment of liability and indemnification. The defendant claimed that any funds withdrawn from its bank was done by Mr. Power, who was authorized by the plaintiff to make such withdrawals. Mr. Power filed a pro se appearance and denied the material allegations of the complaint.
The case was referred to Attorney John W. Hetherington, an attorney trial referee, in accordance with General Statutes § 52-434 (a)(4), as amended by Public Act No. 01-203, and by Practice Book § 19-2A. The referee conducted a trial over the course of four days and, pursuant to Practice Book § 19-4, submitted a report dated September 11, 2001. CT Page 1215
In his report, the attorney trial referee found the following facts: (1) the plaintiff established a corporate checking account in March, 1995, with the last four numbers #7795, on which both Mr. Fitzgerald and Mr. Power, who was designated as a vice president of the plaintiff corporation, were signatories; (2) the banking agreement between the plaintiff and the defendant provided, among other things, that the defendant had the right to offset against any other account of the plaintiff at its bank for any money owed by the plaintiff to the defendant bank; (3) the defendant's personnel advised Mr. Fitzgerald to close down account #7795 after information was received from Citibank in New York City about a check that had bounced, but Mr. Fitzgerald declined to do so for fear of provoking his nephew, Mr. Power; (4) on or about August 26, 1996, Mr. Fitzgerald opened a second corporate checking account with the defendant, with the last four numbers #9936, and he was the only signatory on that account in which the sum of $261,224 was deposited; (5) Mr. Power called the defendant's employees on the telephone and, using the correct employer identification number, 13-3118764, which was the same number for both accounts, #7795 and #9936, he persuaded the defendant to transfer $160,600 from account #9936 to account #7795, after which he withdrew this amount from the latter account on which he was an authorized signatory; (6) General Statutes § 42a-4A-202, the Uniform Commercial Code, refers to transferring funds upon verifying by way of security measures that the person seeking a transfer is authorized to do so, but that the defendant did not have such security procedures to prevent withdrawals by someone not a signatory, and, furthermore, the defendant knew that there was a dispute between Mr. Fitzgerald and Mr. Power and should have held the funds until the dispute was resolved; (7) the plaintiff ignored the defendant's advice to close down account #7795 or to remove Mr. Power as a signatory thereto; (8) the plaintiff permitted Mr. Power to have free access to all its business records including tax identification numbers for its two bank accounts with the defendant; and (9) the plaintiff was in no worse or different position than it would have been if money had not been transferred from the second account and Mr. Power withdrew funds from the first account, which he was entitled to do, because the defendant was authorized to offset any such withdrawals from the first account by debiting the second account where the funds were located.
The attorney trial referee concluded that: (1) the defendant bank breached its contract with the plaintiff by permitting an unauthorized transfer by Mr. Power of the plaintiff's money from the second account, #9936, on which he was not a signatory; (2) the plaintiff's own negligence outweighed the defendant's negligence; and (3) the plaintiff would be unjustly enriched if it prevailed in this action because it left Mr. Power's name on the first account from which the final withdrawal of CT Page 1216 funds from the defendant bank was made, despite advice to the contrary from the defendant. Hence, the referee recommended that judgment enter in favor of the defendant and impliedly that the defendant should not prevail on its counterclaim.
The plaintiff filed objections pursuant to General Statutes § 19-14[1] to the attorney trial referee's report. The plaintiff claims that the attorney trial referee erred in concluding that negligence on the part of the plaintiff was a valid defense to its claim that the defendant had permitted the unauthorized withdrawal of funds from its corporate accounts.
Practice Book § 19-17(a) concerns the function of this court in reviewing reports of attorney trial referees and provides that: "[t]he court shall render such judgment as the law requires upon the facts in the report. If the court finds that the . . . attorney trial referee has materially erred in its rulings or that there are other sufficient reasons why the report should not be accepted, the court shall reject the report and refer the matter to the same or another . . . attorney trial referee . . . for a new trial or revoke the reference and leave the case to be disposed of in court."
Killion v. Davis, 257 Conn. 98, 102-103, 776 A.2d 456 (2001), holds that the court's role in reviewing an attorney trial referee's report is as follows: first, "the trial court must review the referee's entire report to determine whether the recommendations contained in it are supported by findings of fact in the report." (Internal quotation marks omitted.) Id., 102. Second, the court must insure that the report does not contain "legal conclusions for which there are no subordinate facts." (Internal quotation marks omitted.) Id. Third, the report must be reviewed to determine if it is "legally and logically correct." (Internal quotation marks omitted.) Id.
Other principles governing attorney trial referee reports provide that: "A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees." (Citations omitted.) Wilcox Trucking, Inc. v. MansourBuilders, Inc., 20 Conn. App. 420, 423, 567 A.2d 1250 (1989), cert. denied, 214 Conn. 804, 573 A.2d 318 (1990). A fact-finder's recommendations should be accepted when "there is nothing that is unreasonable, illogical or clearly erroneous in the findings of the fact finder and the reasonable inferences that may be drawn therefrom." Id.
The plaintiff did not file a transcript with its objections to the CT Page 1217 attorney trial referee's report. Practice Book § 19-14 requires such a filing when the objections claim that "conclusions of fact . . . were not properly reached on the basis of the subordinate facts found, or that the . . . attorney trial referee erred in rulings on evidence or other rulings or that there are other reasons why the report should not be accepted." Here, the plaintiff states very clearly in its objections that it is not claiming that "conclusions of fact stated were not reached on the evidence before the attorney trial referee." Rather, the plaintiff claims that although it accepts all the facts found by the referee, it objects to the referee's ultimate conclusion that an unauthorized withdrawal of funds from an account can be offset or outweighed by negligence on the part of the account holder. This objection sums up succinctly and accurately the issue in this case.
This court accepts the facts as found by the referee, but still must determine whether the report is "legally and logically correct." Killionv. Davis, supra, 257 Conn. 102. A starting point for this analysis is the general principal that "[A] bank is indebted to its account holders for the amount of the funds that they have deposited." Frigon v. EnfieldSavings Loan Association, 195 Conn. 82, 87, 486 A.2d 630 (1985). A bank performs its duty when it pays funds in an account "to the rightful owner." Id., 90. In this case, the attorney trial referee found that the defendant breached its duty to the plaintiff because the defendant permitted Mr. Power, who was not a rightful owner of the funds in account #9936, to withdraw over $160,000 from that account.
The defendant permitted a transfer between two accounts in its bank both owned by the same entity, the plaintiff corporation. The attorney trial referee pointed out, however, that the defendant had to honor withdrawals from the first account, where Mr. Fitzgerald left Mr. Power as a signatory, despite its knowledge of the latter's improprieties involving checks and despite the defendant's urging Mr. Fitzgerald to do otherwise. However, the defendant could charge the — second account for any such withdrawals. Thus, the referee found that the plaintiff corporation had not been damaged in reality. Despite Mr. Fitzgerald's suspicions that Mr. Power was an embezzler, he left Mr. Power's name on the first account which enabled him to withdraw corporate funds from the defendant bank.
In the absence of any authority to the contrary from the plaintiff, the attorney trial referee's determination that the case turns on the relative degree of fault between the depositor and the bank is not contrary to law or illogical. Therefore, judgment may enter in accordance with the report of the attorney trial referee in favor of the defendant with respect to the plaintiff's complaint and for the plaintiff as to the defendant's counterclaim. CT Page 1218
No costs are to be taxed in favor of either party as each has been found to be negligent.
So Ordered.
Dated at Stamford, Connecticut, this 30th day of January, 2002.
William B. Lewis, Judge T.R.