[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE DEFENDANT'S OBJECTION TO REPORT OF THE ATTORNEY TRIAL REFEREE
This matter comes before this court for consideration as to whether judgment should enter in accordance with the Decision of the Attorney Trial Referee, which was rendered on June 14, 2002. The defendant filed an Objection to this Report on July 2, 2002, and an Amended Objection on July 3, 2002. A Memorandum in response to this objection was filed by the plaintiff and the parties appeared before this court on October 21, 2002, for oral argument.
 Background
In this breach of contract case, the plaintiff, Hayward Sawyer, and the defendant, Thomas J. Arnold, entered into a contract on or about October 26, 1994, whereby the plaintiff would purchase a single-family residence then being constructed by the defendant. As part of the agreement, the defendant guaranteed the residence against defects in workmanship and material for a period of one year from the date of closing. The plaintiff alleges that the defendant breached the warranty, breached an implied promise to perform his duties in a workmanlike manner, and violated the Connecticut Unfair Trade Practices Act (CUTPA).
In his answer to the complaint, the defendant admitted that he and the plaintiff entered into an agreement concerning the sale of a single-family house. He denied the essential allegations, however, specifically, that he breached any implied or express warranties, implied promises or violated the Connecticut Unfair Trade Practices Act. Special defenses were filed by the defendant generally asserting that the plaintiff had actual and/or constructive knowledge of any defects and accepted same; and that the complained of conditions were caused by the activities of the plaintiff and/or the natural settling of the house. A counterclaim filed by the defendant claimed set-offs for monies owed by the plaintiff to him. CT Page 1637
This case was referred to an attorney trial referee (ATR) who heard testimony and took evidence at various times between June 6, 2000 and July 26, 2001. The parties filed trial briefs and draft findings; the final brief was submitted on February 20, 2002. On June 14, 2002, a report and decision were filed simultaneously by the ATR, who made, interalia, the following findings of fact. On October 26, 1994 the parties entered into a contract for the purchase of a house which was under construction by the defendant. (Report ¶ A6.) Prior to the purchase the defendant told the plaintiff that he built his house with higher quality materials, higher quality accessories and higher quality construction. (Report ¶ A2.) After the plaintiff moved into the house numerous defects became apparent to the plaintiff. (Report ¶¶ A16, 17, 21-26, 30-34, 44, 49-52.) The plaintiff hired a structural engineer, George Torello, to investigate and remediate sloping floors and the support system of the house. Mr. Torello testified at the time of trial as an expert witness on behalf of the plaintiff. (Report ¶¶ A39-45, 46, 47, 48, 53, 56.) Based on the 1986 CABO and the 1989 CABO, the dormers, the rafters under the dormers, the second bedroom floors, the garage and the area under the master bedroom were not constructed according to code. (Report ¶ A57.) The remediation costs totaled $78,811.78. (Report ¶ A71.)
Based upon the above facts the ATR concluded that the plaintiff established his claims of unworkmanlike construction; that the house was structurally unsound, and that the recommended remediation was necessary. (Report ¶¶ B1 and 3.) The ATR also determined that the defendant breached express warranties in favor of the plaintiff; however, found insufficient evidence to support the plaintiff's CUPTA claim. (Report ¶¶ B5-8.) The ATR recommended judgment in favor of the plaintiff on Counts One, Two and Three, in the amount of $78,811.78, plus interest, and entered judgment in favor of the plaintiff on the counterclaim.
The defendant filed his objection to the Attorney Trial Referee's Report/Recommended Finding on July 2, 2002, and an Amended Objection on July 3, 2002. There are multiple bases for the defendant's objection: 1) conclusions of fact were not properly reached based on the evidence, particularly related to rafter loads, the deck supports and the remedial work; 2) the expert utilized the wrong standard; 3) because the plaintiff had notice of the alleged defects, the ATR's finding as to Count Three was legally incorrect; 4) interest was incorrectly awarded and/or computed; 5) the plaintiff failed to mitigate damages.
Standard of Review CT Page 1638
Practice Book § 19-17(a) concerns the function of this court in reviewing reports of attorney trial referees and provides that: "[t]he court shall render such judgment as the law requires upon the facts in the report. If the court finds that the . . . attorney trial referee has materially erred in its rulings or that there are other sufficient reasons why the report should not be accepted, the court shall reject the report and refer the matter to the same or another . . . attorney trial referee . . . for a new trial or revoke the reference and leave the case to be disposed of in court."
The Supreme Court, in Killion v. Davis, 257 Conn. 98, 102-03,776 A.2d 456 (2001), held that the court's role in reviewing an ATR's report is as follows: first, "the trial court must review the referee's entire report to determine whether the recommendations contained in it are supported by findings of fact in the report." (Internal quotation marks omitted.) Id., 102. Second, the court must insure that the report does not contain "legal conclusions for which there are no subordinate facts." (Internal quotation marks omitted.) Id. 4. Third, the report must be reviewed to determine if it is "legally and logically correct." (Internal quotation marks omitted.) Id. In this case, a transcript of the trial before the ATR was provided in accordance with Practice Book §19-14, effective January 1, 2001, and, therefore, a preliminary task for this court is to determine whether there is evidence in the record to substantiate the factual findings made by the referee. John M. GloverAgency v. RDB Building, L.L.C., 60 Conn. App. 640, 646, 760 A.2d 980
(2000).
The procedure a party must follow in order to object to an attorney trial referee's report and the scope of a trial court's review thereof depends upon the portion of the report that is challenged. As to the attorney trial referee's findings of fact, "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See: Practice Book §19-17 . . . This court has articulated that attorney trial referees and factfinders share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with definite and firm conviction that a mistake CT Page 1639 has been committed." (Citations omitted; internal quotation marks omitted.) Meadows v. Higgins, 249 Conn. 155, 162, 733 A.2d 172 (1999). "[A] trial court cannot find additional facts or reject others unless a material fact has been found without evidence." TDS Painting Restoration v. Cower Beech Farm, supra, 45 Conn. App. 751.
Practice Book § 23-58(a) provides: "After review of the finding of facts and hearing on any objections thereto, the judicial authority may take the following action: (1) render judgment in accordance with the finding of facts; (2) reject the finding of facts and remand the case to the fact finder who originally heard the matter for a rehearing on all or part of the finding of facts; (3) reject the finding of facts and remand the matter to another fact finder for rehearing; (4) reject the finding of facts and revoke the reference; (5) remand the case to the fact finder who originally heard the matter for a finding on an issue raised in an objection which was not addressed in the original finding of facts; or (6) take any other action the judicial authority may deem appropriate."
Other principles governing ATR reports provide that "[a] reviewing authority may not substitute its findings for those of the trier of facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees . . . This court has articulated that attorney trial referees and factfinders share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court." (Internal quotation marks omitted.) Killion v.Davis, supra, 257 Conn. 102. "The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Meadows v. Higgins, 249 Conn. 155, 162,733 A.2d 172 (1999).
Discussion
I. Conclusions of fact were not properly reached based on the evidence, particularly related to rafter loads, the deck supports and the remedial work.[1]
a) Rafter Loads
The defendant opines that the evidence did not show that the Building CT Page 1640 Code was violated. Specifically, the defendant points to the plaintiff's expert testimony in which he agreed that if three studs were placed, the rafters on which the rear dormers rested were built to code. During cross-examination at trial, Mr. Torello, the plaintiff's expert witness specifically testified that the dormers, the rafter under the dormers, the second bedroom floors, the garage, and the area under the master bedroom were not built to code. (Tr. 10/11/00, p. 19, lines 18-23.) This testimony is sufficient to support the ATR's finding that the construction violated code.
Moreover, the Attorney Trial Referee addresses this issue in his Memorandum of Decision. It was his determination that the faulty conditions of the house were the result of defective construction. The Attorney Trial Referee supported his determination that the construction was defective with ample evidence of subordinate facts Moreover, the ATR specifically stated that he credited the testimony of the plaintiff's expert as giving the more credible explanation of the existing conditions, that being flawed construction. This expert also concluded that the construction was defective "regardless whether in violation of a building code." (ATR Memorandum of Decision, p. 10.)
The defendant does not provide authority for his contention that a violation of code must be proven to establish defective construction. Whether or not the code was violated, there is an abundance of evidence in the record to demonstrate that the construction was faulty, and that the defendant breached the statutory and contractual warranties claimed.
b) Deck Supports
The defendant argues that there was inconsistent testimony concerning the deck supports; therefore, insufficient evidence on which the ATR could support a finding that the supports were unsafe. In the ATR report, there are numerous findings of fact as to the faulty deck supports. (Pp. 44, 49, 53d 53G, 53H, 53AA, 53BB, 53CC, 53DD, 53EE, 53FF and 53GG.) The court finds the record amply supports this finding. The defendant also complains that a more expensive material was used for the repair, and that the defendant should be given a credit of $500.00. The ATR determined that "there would have been a saving of about $400 or $500 if cheaper material were used . . ." (ATR Report, p. 74.) The defendant does not direct this court to any testimony or exhibit to show that a lesser grade of material would have been a satisfactory substitute. Moreover, the court does not find a $400 difference in the context of this case material.
The defendant also avers that the ATR wrongly concluded that all the CT Page 1641 deck posts were incorrectly spaced. The Fairfield Building Inspector testified that for a permit to issue the required (maximum) distance between the deck posts as of June 1, 1996 was six inches. (Tr. 10/12/00, p. 7.) According to the defendant's brief, "It was undisputed from all the testimony that but for one area (where one vertical post had been removed) the spacing distance was less than six inches." (P. 3.)
As referenced in the ATR's report, the plaintiff's expert testified that the "balustrades (posts) were warped and had too much space between them . . ." The expert, however, gave additional opinions concerning the safety of the deck posts: "[t]he most critical element and the reason we asked them to be ribbon[ed] off and do not go out on the deck was the stability and the strength of the posts . . . could not sustain a horizontal force in accordance with building code requirements." (Tr. 6, 6/6/00, pp 140-41.) The court finds that there was sufficient evidence from which the ATR could conclude that the deck posts were unsafe and required replacing, whether or not Mr. Torello's testimony concerning required post spacing was identical to that of the Fairfield building inspector. Moreover, the weight to be given to the testimony of a witness is for the fact finder to determine.
 II. The Plaintiff's Expert Utilized the Incorrect Standard.
The defendant appears to argue that the plaintiff's expert testified concerning the wrong building standards. Plaintiff responds, however, that violation of code is but one piece of evidence to prove defective construction. As noted in the ATR's findings of fact, Mr. Torello, the plaintiff's expert, is a structural engineer. (Finding No. 40.) The ATR accepted the expert's opinion that the structure was unsound and construction unworkmanlike. (Finding No. 60.) The defendant provides no authority to support his contention that a specific code violation must be proven to support a claim of defective construction. Again, the court finds ample subordinate facts to support the ATR's findings, and that the ATR's conclusion that the construction was defective is sound and logical.
III. Because the plaintiff had notice of the alleged defects, the ATR's finding as to Count Three was legally incorrect.
Count Three of the plaintiff's complaint alleges breach of implied statutory warranties, under Connecticut General Statute § 47-118.[2]
It is the defendant's position that because the allegedly defective floors were reasonably discoverable by the plaintiff prior to the signing of the contract the ATR was legally incorrect in finding for the plaintiff under Count Three. See: Connecticut General Statute § 47-118
CT Page 1642 (b). In his report, the ATR found that the date the contract was signed was October 26, 1994 (ATR report ¶ 6.) This conclusion is based upon Exhibit A, which is the original purchase agreement signed by the defendant, Thomas J. Arnold, and the plaintiff, Hayward L. Sawyer, on October 26, 1994.
According to the defendant's brief, as of October 26, 1994, the house was "substantially built, with all framing and floors completed," although the defendant provided no citation to the record to support this assertion. Moreover, the ATR found that after the date of contract, but before the date of the closing, the plaintiff discussed concerns about a sloping hallway floor with the defendant who told him that the floor was not sloping, and that he "was just feeling it or something." (ATR Memorandum of Decision, p. 2, TR. 6/6/00, p. 21.) Based on the defendant's own statement, which was credited by the ATR, it is apparent that the sloping hallway was not "reasonably discoverable" as of October 26, 1994. Moreover, the record is replete with evidence of other construction defects that the defendant does not claim were discoverable as of the date of contract. Accordingly, the court cannot find that the ATR's ruling on Count Three was legally incorrect.
 IV. Interest was incorrectly awarded and/or computed.
The defendant states that because the plaintiff did not specifically seek interest in his claims for relief other than under the CUTPA claim, interest should not have been awarded by the ATR, although, again, no authority is provided. In the matter of Greengarden v. Kuhn,13 Conn. App. 550, 537 A.2d 1043 (1988), a similar argument was unavailing. In that case, the Appellate Court upheld a jury award for a real estate commission, which included interest, an item not specifically pleaded. In so doing the court stated:
 As for the interest, the defendant claims that since the plaintiff did not allege interest should not be granted. It is well established, however, that interest need not be specifically claimed in the demand for damages in order to recover. Practice Book 140 [now § 10-28]. "The allowance of interest as an element of damages is primarily an equitable determination and a matter lying within the discretion of the trial court." State v. Stengel, 192 Conn. 484, 487, 472 A.2d 350
(1984).
Greengarden v. Kuhn, supra at 553.
Here, the ATR specifically found that equity required the award of interest "in order to place the plaintiff in the same position he would CT Page 1643 have been in if the contract were fulfilled." (Memorandum of Decision, p. 12.) Based upon the above, the court cannot conclude that the ATR was legally incorrect in awarding interest.
The defendant also asserts that the ATR computed interest from the improper date, although does not provide the court with the specific date(s) from which, in his judgment, interest should have been computed. As noted in his report, the ATR awarded interest accruing from January 17, 1996, which was the date the notices of the breaches were sent to the defendant. The court finds this rationale to be logical and reasonable and cannot conclude the recommendation was erroneous.
 V. The plaintiff failed to mitigate damages
Contrary to the defendant's assertion, the ATR specifically determined, based upon sufficient subordinate facts, that "[t]he remediation method employed by Barbieri was the most economical and involved the least amount of cost and aggravation to Sawyer." (ATR report, ¶ 73, TR. 7/26/01, p. 53.) This amply supports that the plaintiff attempted to mitigate damages; the defendant's argument is unavailing.
Conclusion
The recommendations of an Attorney Trial Referee should be accepted when "there is nothing that is unreasonable, illogical or clearly erroneous in the findings of the fact finder and the reasonable inferences that can be drawn therefrom." Wilcox Truckline, Inc. v.Mansour Builders, Inc., 20 Conn. App. 420, 425, 567 A.2d 1250 (1989). The court finds no material error in the report of the ATR, or any other "sufficient reason why the report should not be accepted." Connecticut Rules of Practice § 19-17 (a). The defendant's objections are overruled; the report of the ATR is accepted. Judgment may enter in favor of the plaintiff, in accordance with the recommendation of the ATR.
By The Court,
WOLVEN, JUDGE